**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Eliodoro VALENSIA, Defendant–Appellant.**

**No. 99–10170.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 14, 2000.

Vacated Jan. 26, 2000.

Resubmitted July 3, 2000.

Filed Aug. 1, 2000.

Patience Milrod, Law Office of Patience Milrod, Fresno, California, for the defendant-appellant.

William L. Shipley, Assistant United States Attorney, Fresno, California, for the plaintiff-appellee.

Before: ALARCON, TASHIMA, and SILVERMAN, Circuit Judges.

ALARCON, Circuit Judge:

Eliodoro Valensia appeals from the sentence imposed by the district court following his plea of guilty to conspiracy to distribute methamphetamine and to conspiracy to possess methamphetamine with the intent to distribute in violation of 21 U.S.C. §§ 841(a) and 846. The district court imposed a two-level enhancement pursuant to § 3B1.1(c) of the United States Sentencing Guidelines ("U.S.S.G.") for Valensia's role as a manager or supervisor in the conspiracy, and it imposed a two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) for the possession of a firearm in the course of the conspiracy. Valensia contends that the district court should have applied a clear and convincing evidence standard in assessing the enhancements on the ground that the enhancements had an extremely disproportionate effect on the length of his sentence. He also contends that the evidence offered in support of the enhancements failed to satisfy even the preponderance of evidence standard because it consisted of "inherently unreliable" hearsay statements.

We have jurisdiction pursuant to 18 U.S.C. § 3742(a). We hold that the district court did not err in applying the preponderance of the evidence standard in making its factual determinations because the contested enhancements, based on uncharged acts or conduct, did not have an extremely disproportionate effect on the length of Valensia's sentence. We affirm the sentence imposed by the district court, because we conclude that the hearsay statements offered by the Government during the sentencing proceedings were accompanied by sufficient indicia of reliability.

I

On July 12, 1996, the Fresno County Sheriff's Department received a tip from an informant that an active methamphetamine laboratory was in operation at 6291 East Clarkson Avenue in Selma, California. Law enforcement officers obtained a warrant and searched the location. There, they discovered a laboratory that was manufacturing approximately seventy pounds of methamphetamine. They also found several loaded firearms, including an AK 47–style assault rifle and a .380 caliber handgun, which were located inside a mobile home adjacent to the laboratory. Raymond Davis, Jose Arzate, and Roberto Mora were arrested at the scene. Valensia, who was not present during the raid, was not arrested.

On October 14, 1996, the Fresno County Sheriff's Department received a tip from an informant that Valensia was in the process of manufacturing methamphetamine in an apartment at 1614 East Myrtle Avenue in Reedley, California. Law enforcement officers served a search warrant and entered the premises, where they discovered six pounds of finished methamphetamine and five pounds of methamphetamine in solution. Valensia was present during the raid and arrested. When he was arrested, Valensia was carrying a pager.

On May 1, 1997, the United States Attorney for the Eastern District of California charged Valensia with conspiracy to distribute methamphetamine and with conspiracy to possess methamphetamine with the intent to distribute in violation of 21 U.S.C. §§ 841(a) and 846. On September 28, 1998, Valensia entered a plea of guilty to these charges. During the plea proceedings, he admitted obtaining chemicals for the production of methamphetamine, attempting to manufacture methamphetamine at the Clarkson laboratory site, and transporting chemicals and equipment to the Myrtle laboratory site.

After interviewing Valensia, a probation officer recommended that he be given a three-level reduction in sentence pursuant to U.S.S.G. § 3E1.1 for accepting responsibility for his involvement in the drug conspiracy. The probation officer also recommended, however, that Valensia be given a two-level enhancement pursuant to U.S.S.G. § 3B1.1(c)[1] for his role as a manager or supervisor of the drug conspiracy, and a two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1)[2] for the possession of a weapon during the course of the conspiracy.

Valensia objected to the factual findings regarding the two proposed enhancements. In response, the United States requested an opportunity to present evidence regard-

---

**1.** Section 3B1.1 of the U.S.S.G. states:

Based on the defendant's role in the offense, increase the offense level as follows:
(a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.
(b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.
(c) *If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.*
*Id.* (emphasis added).

**2.** Section 2D1.1(b)(1) of the U.S.S.G. states:

If a dangerous weapon (including a firearm) was possessed, increase by 2 levels.

ing whether Valensia played an aggravating role in the conspiracy and whether he could foresee that weapons would be possessed at the Clarkson location. The district court heard testimony on both issues from two Government witnesses, Detective Richard Lyons and Detective Brent Wood, of the Fresno County Sheriff's Department.

Detective Lyons participated in both the initial search of the Clarkson laboratory site and the investigation of additional suspects who were believed to be involved in the manufacture of methamphetamine, but who were not arrested during the raid. Detective Lyons testified that Raymond Davis, who resided ·at the Clarkson address at the time of his arrest, informed him that a person named "Lalo" or "Lolo" was the organizer of the Clarkson laboratory. Detective Lyons testified that Davis positively identified Valensia from a photograph as the person named "Lalo" or "Lolo." Davis also admitted accepting a total of $4,500 from Valensia in exchange for allowing him to use the location to manufacture methamphetamine in June or July of 1996, and on a second occasion beginning on July 11, 1996.

Detective Wood testified that he interviewed Jose Arzate following the July 12, 1996 raid of the Clarkson laboratory site. Arzate identified Valensia from a photo lineup as the person responsible for the Clarkson laboratory site. Arzate referred to Valensia as "Lolo." Arzate also informed Detective Wood that Valensia had offered him $3,000 to find a suitable location for manufacturing methamphetamine. Arzate further stated that Valensia and several Hispanic males unloaded laboratory equipment at the Clarkson property. Valensia began the process of manufacturing methamphetamine at the Clarkson laboratory site, and remained there after the chemical process started.

Detective Wood also testified that he interviewed Roberto Mora, Valensia's nephew. Mora informed Detective Wood that he had assisted Valensia in manufacturing methamphetamine at the Clarkson laboratory site. Mora observed Valensia add a different type of freon to the chemical solution to improve its yield. On the day of Mora's arrest, Valensia came to the Clarkson laboratory site, added ice to large plastic barrels used in the manufacturing process, and then left the location, stating that he would return later. Detective Wood testified that, based on his knowledge and experience, Valensia's conduct, as described by Mora, was indicative of a person who is responsible for operating a methamphetamine laboratory.

Detective Wood also testified that he examined telephone records from locations believed to be involved in the drug conspiracy. These records reflected that telephone calls were placed from several of the locations believed to be involved in the conspiracy to Valensia's residence and to his pager.

The district court applied the preponderance of the evidence standard and, based on the statements of his coconspirators, found that Valensia was the manager or supervisor of the drug conspiracy. The district court imposed a two-level enhancement for his role in the offense pursuant to U.S.S.G. § 3B1.1(c). The district court also found that, given his role in the conspiracy, Valensia "had to have knowledge" of the weapons that were seized at the Clarkson laboratory, and imposed a two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1). The district court granted Valensia a three-level downward adjustment for his acceptance of responsibility and sentenced him to imprisonment of 262 months. Had it not been for the two contested enhancements, Valensia's sentence would have ranged from 168–210 months.

II

Valensia contends that the district court erred in failing to apply the clear and convincing evidence standard in determining whether he played a managerial role in the conspiracy alleged in the indictment and was responsible for possessing a fire-

arm during the commission of that offense. He also seeks reversal of the district court's sentencing decision on the ground that the district court erred in relying on inherently unreliable hearsay statements in enhancing his sentence.

 We review de novo the constitutionality of a sentence. *See United States v. Mezas de Jesus*, 217 F.3d 638 (9th Cir. 2000). "Because due process protects a defendant's interest in fair sentencing, we review the district court's application of the standard of proof at sentencing for harmless error beyond a reasonable doubt." *Id.* at 642.

█ In *United States v. Restrepo*, 946 F.2d 654 (9th Cir.1991) (en banc) (*Restrepo II*), we held that due process is generally satisfied when a district court uses the preponderance of the evidence standard in making findings in sentencing proceedings. *Id.* at 661. In that case, Restrepo was charged in count I and count II of the indictment with distributing cocaine. *See United States v. Restrepo*, 903 F.2d 648, 650 (9th Cir.1990) (*Restrepo I*). Judith De Maldonado, a codefendant, was also charged in count II. *See id.* In addition, she was charged separately in counts III and IV with possession of cocaine with the intent to distribute. *See id.* She pleaded guilty to count II, count III, and count IV of the indictment. Restrepo was convicted as charged in count I and count II of the indictment. *See id.*

De Maldonado testified during Restrepo's trial that he "provided all the cocaine that she had sold, and an additional amount of cocaine that she had turned over to the police." *Restrepo I*, 903 F.2d at 650. The sentencing guideline range for the crimes charged against Restrepo in count I and count II, after considering the amount of drugs involved in the commission of those offenses, would have been 27–33 months. *See id.* In calculating Restrepo's sentence, the district court aggregated the amount of drugs involved in the charges against De Maldonado in count III and count IV, and the additional amount she turned over to the police, even though

Restrepo was not charged in count III and count IV. *See id.; Restrepo II*, 946 F.2d at 661. Restrepo's offense level was raised from 14 to 18, and, given his criminal history category, his sentence was increased to a range of 41 to 51 months. *See Restrepo I*, 903 F.2d at 650. The district court sentenced Restrepo to a 46–month prison term to be followed by 6 years of supervised release. *See id.* The 46–month sentence imposed by the district court, as a result of the four-level enhancement, was a 70.4% increase from the low end of the initial sentencing guideline range of 27 to 33 months, a 53% increase from the median of that range, and a 39.4% increase from the high end of that range.

We held that the application of the preponderance of the evidence standard satisfied the Due Process Clause. *See Restrepo II*, 946 F.2d at 660–61. In reaching our decision, we noted that the sentencing guideline construed by the district court did not:

(1) negate the presumption of innocence or the prosecutor's burden of proving guilt with regard to the underlying crime in the conviction stage of the criminal justice process, or (2) alter the maximum penalty available for the crime committed, or (3) create new offenses requiring separate punishment.

*Id.* at 657 (footnote omitted). We also concluded that none of these factors was at issue, given the particular facts of the case. In his concurring opinion, Judge Tang noted that the sentence imposed by the court had "no effect on the maximum penalty authorized by statute." *Id.* at 662. Judge Tang also stated that "the sentencing factor here in question did not drastically affect the Guidelines range to which Restrepo was otherwise subject." *Id.*

In *Restrepo II*, we commented in dicta, that "there may be an exception to the general rule that the preponderance standard satisfies due process when a sentencing factor has an extremely disproportionate effect on the sentence relative to the

offense of conviction." *Restrepo II*, 946 F.2d at 659. In footnote 12, we stated that footnote 1 contains "examples of two scenarios under the Guidelines that [threaten] an unacceptable sentencing effect under only a preponderance of the evidence standard." *Id.* at 661 n. 12. Footnote 1 reads as follows:

> The Third Circuit has recognized that if a sentencing factor has an extreme effect on the sentence, such as a departure from 30 months (the median of the applicable guideline range in that case) to 30 years, the sentencing factor has become " 'a tail which wags the dog of the substantive offense.' " *United States v. Kikumura*, 918 F.2d 1084, 1101 (3d Cir. 1990) (quoting *McMillan*, 477 U.S. at 88, 106 S.Ct. at 2417). Consequently, the court concluded that the factor must be proven by clear and convincing evidence. *Id.* at 1102. The Eighth Circuit has also suggested, without deciding, that a sentencing factor that produces an 18–level increase in a base offense level and a 7–fold increase in the permissible sentencing range may require clear and convincing evidence before it can be applied. *United States v. Townley*, 929 F.2d 365, 370 (8th Cir.1991).

*Id.* at 656 n. 1.

Since we published our decision in *Restrepo II*, we have considered the question whether the district court's sentence was extremely disproportionate relative to the offense of conviction in five cases. We did not articulate a bright line rule for determining when the clear and convincing evidence standard must be applied in any of these cases. Instead, we weighed the discrete factors presented in each case in deciding whether an enhancement had an extremely disproportionate effect on the length of the defendant's sentence.

In *United States v. Sanchez*, 967 F.2d 1383 (9th Cir.1992), the defendant pleaded guilty to distributing heroin in a single transaction in July of 1990. *Id.* at 1384. Given the defendant's criminal history category, the initial sentencing guideline range for that offense was 10–16 months.

*See id.* at 1384. The district court enhanced the defendant's sentence based upon heroin transactions that occurred on other dates. *See id.* This enhancement raised the defendant's sentencing range from 10–16 months to 63–78 months. *See id.* The district court, however, reduced the defendant's offense level for acceptance of responsibility and thereby lowered the defendant's sentencing range to 33–41 months. *See id.* The district court then sentenced the defendant to imprisonment of 33 months, an increase of 230% from the low end of the initial sentencing guideline range, an increase of 153.8% from the median of that range, and an increase of 106% from the high end of that range. *See id.* at 1387. We rejected the defendant's contention that the enhancement for relevant uncharged conduct resulted in a sentence that was so disproportionate that due process required the application of the clear and convincing standard. *See id.* at 1385–87. In so holding, we noted that the "enhancement did not result in the [defendant] receiving a sentence in excess of the statutory maximum for his offense of conviction. Therefore, [his] enhancement complies with *Restrepo II*'s mandate." *Id.* at 1385 (citation omitted).

In *United States v. Harrison–Philpot*, 978 F.2d 1520 (9th Cir.1992), the defendant was convicted of one count of conspiring to distribute cocaine and seven counts of distributing cocaine that involved a total of 67 grams of cocaine. *Id.* at 1522. Given the defendant's criminal history category, the offense level for that quantity of cocaine, yielded an initial sentencing guideline range of 41–51 months. *See id.* The district court determined that the defendant and his coconspirators distributed between 15 and 49.9 kilograms of cocaine during the conspiracy period and increased his offense level accordingly. *See id.* This calculation resulted in a sentencing range of 292–365 months. The district court imposed a 352–month sentence, but did not indicate which evidentiary standard it applied. *See id.* at 1523. We noted that the clear and convincing standard does not

apply when "the extent of the conspiracy caused the tremendous increase in [the defendant's] sentence." *Id.* We distinguished *Restrepo II* on the basis that the defendant in that case suffered an enhancement for *uncharged* conduct. *See id.* We then held that calculating the sentencing range based upon the extent of the conspiracy is not an enhancement of a sentence for an uncharged offense. *See id.* We also indicated in dicta that "[a]nother case, one where *uncharged* conduct greatly enhances a sentence, may provide the proper forum to address sentencing standards and due process concerns." *Id.* at 1524 (emphasis in original).

In *United States v. Rutledge*, 28 F.3d 998 (9th Cir.1994), the defendant pleaded guilty to being a felon in possession of a firearm. *Id.* at 1000. The district court increased the sentencing range from 77–96 months to 140–175 months after finding that the defendant had used the gun in an uncharged attempted robbery, and imposed a sentence of 120 months, which was the statutory maximum for that offense. *See id.* at 1000, 1004. We commented in dictum that "[i]f a range increase from 41–51 to 292–360 does not require a higher standard, *see Harrison–Philpot*, 978 F.2d at 1523–24, then the sentencing increase in this case does not *a fortiori* warrant a higher standard of proof." *Id.* We characterized this statement as dicta because the court noted that the record showed that "the district court considered the evidence presented in light of the highest standard, proof beyond a reasonable doubt." *Id.*

In *United States v. Hopper*, 177 F.3d 824 (9th Cir.1999), *cert. dismissed United States v. Reed*, —— U.S. ——, 120 S.Ct. 1578, 146 L.Ed.2d 477, we held for the first time that "the district court erred in failing to apply the clear and convincing standard" in weighing the evidence offered to support a sentencing enhancement. *Id.* at 833. There, the district court applied a seven-level increase to the sentence imposed on George Reed based on official victim and violent conduct enhancements and, accordingly, increased the sentencing range from 24–30 to 63–78 months. *See*

*id.* We focused on the increase in the sentence from the initial sentencing guideline range and concluded that "[g]iven the relative shortness of George Reed's sentence, a potential increase of 48 months satisfies the *Restrepo* extremely disproportionate impact test." *Id.* We also considered whether a four-level increase in the sentence of another defendant, Roger Knight, required the application of the clear and convincing evidence standard. *See id.* We did not indicate the initial sentencing guideline range, or the enhanced sentencing range, or the precise sentence that Knight received as a result of the enhancement. *See id.* Instead, we held that "Knight's resulting four-level increase in sentence [was] not an exceptional case that [required] clear and convincing evidence." *Id.*

In our most recent decision regarding the standard that should be applied in applying a sentence enhancement, *Mezas de Jesus*, we held that the district court erred in applying the preponderance of the evidence standard in imposing a sentencing enhancement based on uncharged conduct. 217 F.3d at 643. There, the defendant was convicted of being an undocumented immigrant in possession of a firearm. *See id.* at 645. The district court enhanced his sentence nine levels after finding that the firearm was used in an uncharged kidnapping. *See id.* As a result, his sentencing range was increased from 21–27 months to 57–71 months. *See id.* The defendant was sentenced to prison for 57 months, which was more than double the sentence authorized by the initial sentencing guideline range. *See id.* We stated that, "[a]lthough [the defendant] was sentenced at the low end of the enhanced sentencing range, he went from a 'relatively short' sentence of less than two years to nearly five years based on an offense for which he was never even charged." *Id.* at 643. We held in *Mezas de Jesus* that "*Hopper* [required] the evidence of the uncharged kidnapping to be established by clear and convincing evidence before it [could] be used to increase [the defendant's] sentence." *Id.* at 643.

■ In the present case, the statutory maximum for the crime of conspiracy to manufacture and possess 50 grams or more of methamphetamine with the intent to distribute is life imprisonment. *See* 21 U.S.C. § 841(b)(viii). The presentence report indicates that Valensia was involved in the manufacture of more than 35.71 kilograms of methamphetamine. Valensia does not contest this amount. In his written offer to plead guilty, Valensia informed the court that he understood that the mandatory minimum sentence for his offense is ten years, and the maximum sentence is life imprisonment. Based on the quantity of methamphetamine that was seized during the investigation of the conspiracy, Valensia's base offense level was 38, and his sentencing guideline range was 235–293 months.

The district court added two levels to Valensia's base offense level for his leadership role in the drug conspiracy pursuant to U.S.S.G. § 3B1.1(c), and two levels for the possession of a firearm during the course of the conspiracy. This calculation brought the offense level to 42. The court deducted three levels for acceptance of responsibility and reduced Valensia's offense level to 39. Given his criminal history category, that offense level provided for a sentence of 262–327 months. The district court sentenced Valensia to imprisonment of 262 months. Without the enhancements, Valensia's offense level would have been 35, and his sentencing guideline range would have been 168–210 months.

Valensia asserts that "[t]he difference between an enhanced and unenhanced sentence ... was 94 months, or almost eight years—an increase of more than 55%." Valensia contends that a four-level enhancement that results in an increase in the sentencing guideline range is extremely disproportionate and may not be imposed unless the district court has applied the clear and convincing evidence standard. The only circuit authority cited by Valensia in support of this contention is the dicta in our en banc decision in *Restrepo II*, and this court's holding in *Hopper*.[3]

3. Valensia has also requested that we consider three out-of-circuit cases. *See United States v. Gigante*, 39 F.3d 42 (2d Cir.1994) (*Gigante I*); *United States v. Lombard*, 72 F.3d 170 (1st Cir.1995); *United States v. Townley*, 929 F.2d 365 (8th Cir.1991). None of these cases, however, advances his cause.

The discussion of upward adjustments and departures in *Gigante I* was vacated four years ago in *United States v. Gigante*, 94 F.3d 53 (2d Cir.1996) (*Gigante II*). In *Gigante II*, the Second Circuit stated that "unconvicted conduct may be relied upon to adjust a defendant's sentence level as contemplated by the Guidelines based on proof by a preponderance of the evidence." 94 F.3d at 55. The initial sentencing guideline range of 27–33 months was enhanced for one defendant to an actual sentence of 188 months. The other defendant's sentence was enhanced from an initial range of 27–33 months to an actual sentence of 200 months. *See id.* The Second Circuit expressly rejected the defendants' contention that the district court erred in failing to apply the clear and convincing standard. *See id.* In dicta, the court stated that a district court should be entitled to depart downward when faced with a series of adjustments, each of which involves conduct proven by a bare preponderance, leading to substantial enhancement. *See id.*

Similarly, the sentencing issue presented to the First Circuit in *Lombard* was whether the district court erred in concluding that it lacked the discretion to consider a downward departure where the defendant's initial sentencing guideline range was 30–37 months, and as a result of an enhancement for an uncharged murder, he received a mandatory life sentence. 72 F.3d at 175 & n. 6. The First Circuit held that "the district court had authority to avoid any unfairness in [the defendant's] sentence through the mechanism of downward departure." *Id.* at 183. In this matter, Valensia did not seek a downward departure based on the increase in the sentencing range resulting from the enhancements. We express no view regarding the merits of the discussion concerning downward departures in *Gigante II* and *Lombard*.

Finally, in *Townley*, the Eighth Circuit held that "a preponderance of the evidence suffices for determinations at sentencing." 929 F.2d at 369. The court expressly declined to adopt the clear and convincing evidence standard. *See id.* at 370. Instead, the court commented as follows:

We do not foreclose the possibility that in an exceptional case, such as this one, the clear and convincing standard adopted by our sister circuit might apply. Neverthe-

Valensia's reliance on *Hopper* is misplaced. As discussed above, in *Hopper*, we held that a four-level enhancement is "not an exceptional case that requires clear and convincing evidence." *Hopper*, 177 F.3d at 833.

 Valensia has failed to discuss the factors that should be considered in determining whether an enhanced sentence is extremely disproportionate to the initial sentencing guideline range. While we have recognized that the Due Process Clause requires the application of a clear and convincing evidence standard when an enhancement based upon uncharged conduct has an extremely disproportionate effect on the length of a defendant's sentence, we have not articulated a bright line test for the application of this rule. Instead, we have considered the disparity between the sentence that could have been imposed under the initial sentencing guideline range and the sentence actually imposed on a case-by-case basis, without relying on any single factor as controlling. This totality of the circumstances approach to this question is consistent with the Supreme Court's instruction that "[d]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

██ In discussing the extremely disproportionate effect of an enhanced sentence, we have identified the following factors:

One. Does the enhanced sentence fall within the maximum sentence for the crime alleged in the indictment?[4] *See Restrepo II*, 946 F.2d at 657, 662; *Sanchez*, 967 F.2d at 1385.

Two. Does the enhanced sentence negate the presumption of innocence or the prosecution's burden of proof for the crime alleged in the indictment? *See Restrepo II*, 946 F.2d at 657.

Three. Do the facts offered in support of the enhancement create new offenses requiring separate punishment? *See Restrepo II*, 946 F.2d at 657.

Four. Is the increase in sentence based on the extent of a conspiracy? *See Harrison–Philpot*, 978 F.2d at 1523–24.

Five. Is the increase in the number of offense levels less than or equal to four? *See Hopper*, 177 F.3d at 833.

Six. Is the length of the enhanced sentence more than double the length of the sentence authorized by the initial sentencing guideline range in a case where the defendant would otherwise have received a relatively short sentence? *See Mezas de Jesus*, 217 F.3d at 643; *Hopper*, 177 F.3d at 833.

Valensia does not maintain that the first four factors apply to this matter. The fifth factor does not assist him because the enhancements led only to a four–level increase in his offense level. *See Hopper*, 177 F.3d at 833. The sentence imposed by the court was far less than a 100% increase in the sentence authorized by the initial sentencing guideline range. Thus, the sixth factor does not compel the application of the clear and convincing evidence standard. Given Valensia's criminal history category and his offense level, the contested four-level enhancement did not present an "exceptional case that requires clear and convincing evidence." *Id.* This is not a case that involves the doubling of

---

less, we do not adopt the clear and convincing standard here. Rather, we leave that question for another day, because in our view, the Government's evidence cannot withstand scrutiny even under the preponderance standard applicable to the usual case. *Id.*

4. We note that the Supreme Court, in *Apprendi v. New Jersey*, —— U.S. ——, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), recently held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."

what would otherwise be a "relatively short" sentence. *Mezas de Jesus*, 217 F.3d at 643. The district court did not deprive Valensia of his right to due process by determining the facts pursuant to the preponderance of the evidence standard.

### III

Having concluded that the preponderance of the evidence standard applies in the present case, we must next determine whether the Government presented sufficient evidence to carry its burden of establishing the applicability of the two contested enhancements. Valensia asserts that the evidence offered in support of the enhancements was insufficient to support the sentence increase even under the preponderance of the evidence standard, because it consisted almost entirely of the "inherently unreliable" hearsay statements of Valensia's coconspirators.

 In resolving disputed issues of fact at sentencing, a district court is not bound by the Federal Rules of Evidence or all of the constitutional protections afforded a defendant at trial. *See United States v. Marin–Cuevas*, 147 F.3d 889, 894–95 (9th Cir.1998); *United States v. Petty*, 982 F.2d 1365, 1367–68 (9th Cir.1993); U.S.S.G. § 6A1.3, cmt. While we have noted that "a defendant clearly has a due process right not to be sentenced on the basis of materially incorrect information," we have held that a sentencing court may consider hearsay statements so long as they are accompanied by "some minimal indicia of reliability." *Petty*, 982 F.2d at 1369. We review for an abuse of discretion the question whether hearsay statements are sufficiently reliable to be considered in fashioning a sentence. *See United States v. Shetty*, 130 F.3d 1324, 1331 (9th Cir.1997).

In *United States v. Huckins*, 53 F.3d 276 (9th Cir.1995), we recognized that a defendant's right to due process may be violated where the sentencing court relied on the hearsay statements of an accomplice when determining whether to in-crease a sentence. *Id.* at 279. In *Huckins*, the district court departed upwards from the applicable sentencing guideline range after finding that the defendant possessed a firearm during the course of a bank robbery. *Id.* at 278. The district court's finding was supported only by the post-arrest hearsay statement of a codefendant that both he and the defendant carried guns, and by the hearsay statement of a teller that the defendant put his hands in his pockets. *See id.* at 278–79. We reversed the decision of the district court, holding that the hearsay statement of the codefendant was not sufficiently reliable to merit consideration. *See id.* at 279. We reasoned that the statements were made "in the context of plea negotiations with the government, in which [the codefendant] may very well have been hoping to curry favor with law enforcement officers by implicating his accomplice." *Id.*

 In the present case, Valensia maintains that the hearsay statements of his coconspirators, like those of the codefendant in *Huckins*, were not sufficiently trustworthy to serve as the basis for the enhancements to his sentence. Valensia's argument is premised on the assumption that the hearsay statements of Davis, Arzate, and Mora were unreliable due to the fact that they arguably were aware that they faced federal prosecution at the time the statements were made. Valensia asserts that their extrajudicial statements should not be trusted, because they were made to curry favor with federal prosecutors.

After reviewing the record, we have concluded that the statements of Valensia's coconspirators were accompanied by a sufficient indicia of reliability to merit consideration by the district court notwithstanding the fact that the declarants arguably had an interest in implicating Valensia. Unlike the statements in *Huckins*, none of the hearsay statements relied on by the district court was made in connection with a plea negotiation. Rather, each was freely and voluntarily given without promise of

benefit. More importantly, unlike the single, uncorroborated statement of the codefendant in *Huckins*, the hearsay statements at issue in this case consist of three identical statements, given independently under circumstances which limited the possibility for collusion, that corroborate one another.[5] When viewed in conjunction with the telephone records showing that Valensia was the common point of contact among members of the conspiracy, the extrajudicial statements were sufficiently trustworthy for the district court to rely upon in determining whether to enhance Valensia's sentence. The district court did not err in basing the two contested enhancements upon the hearsay statements of Valensia's coconspirators.

### IV

We hold that the district court correctly applied the preponderance of the evidence standard in determining whether to impose the contested enhancements. We affirm the sentence imposed, because we conclude that the hearsay statements of Valensia's coconspirators were sufficiently trustworthy to form the factual basis for the contested enhancements.

**AFFIRMED.**

---

**5.** In fact, the only inconsistency in the hearsay statements concerns whether Valensia left the Clarkson laboratory during the manufacturing process. In his interview with law enforcement officers, Arzate stated that Valensia remained at the Clarkson laboratory site throughout the manufacturing process. In a separate interview, in contrast, Mora stated that Valensia arrived at the Clarkson laboratory, added ice to the processing vats, and then departed. A close reading of the record, however, shows that Arzate's statement does not conflict with Mora's statement. Arzate and Mora both agree that Valensia participated in the manufacturing of methamphetamine at the Clarkson laboratory on two separate occasions. Arzate's statement that Valensia remained at the laboratory during the entire manufacturing process refers to the production of methamphetamine on the first occasion, while Mora's statement that Valensia remained at the laboratory only during the critical phases of production refers to the production of methamphetamine on the second occasion.