**UNITED STATES of America,**
**Plaintiff—Appellee,**

v.

**Terrance Edward NIKRASCH,**
**Defendant—Appellant.**

No. 00–50485.

D.C. No. CR–98–00375–MMM–1.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 6, 2001.

Decided Dec. 26, 2001.

Before HALL, KOZINSKI and W. FLETCHER, Circuit Judges.

## MEMORANDUM *

### BACKGROUND

Defendant-appellant Terrance Edward Nikrasch ("Nikrasch") appeals his conviction and sentence, following his pleas of guilty to one count of escape from federal custody, one count of passing counterfeit

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

currency, and one count of possessing counterfeit currency. Because the facts are well known to the parties, they are explained here only to the extent necessary to explain our ruling.

## DISCUSSION

### I. Withholding of Material Discoverable Evidence

Nikrasch claims that the government's failure to produce all potentially exculpatory discovery was unlawful both pursuant to Rule 16 of the Federal Rules of Criminal Procedure and *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

#### A. Rule 16

■ First, Nikrasch argues that the government failed to produce discoverable evidence in violation of Federal Rule of Criminal Procedure 16. Specifically, Nikrasch claimed that the government should have turned over copies of surveillance videotapes, physical descriptions, and artists' sketches. Nikrasch claimed that the physical descriptions and artists' sketches did not resemble him, and that it was impossible to identify him in the videotapes. Thus, Nikrasch believed that the evidence could have been used to establish that someone else had passed the counterfeit currency.

Rule 16(a)(1)(C) provides:

> Upon request of the defendant the government shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant.

■ Evidence is material under Rule 16 if it is relevant to the development of a possible defense, *United States v. Olano*, 62 F.3d 1180, 1203 (9th Cir.1995), or if it will enable the accused to "substantially alter the quantum of proof in his favor," *United States v. Marshall*, 532 F.2d 1279, 1285 (9th Cir.1976) (citations omitted). As the district court found, none of the material that Nikrasch claims should have been turned over to him by the government would have been relevant to either the counts charged in the indictment or the counts of conviction or the development of a possible defense. Rather, this material relates to passing counterfeit notes in other districts. Evidence of such activity would only be relevant at sentencing. Therefore, Rule 16(a)(1)(C) does not apply.

#### B. Brady Material

■ Next, Nikrasch argued below that the government's failure to turn over the evidence constituted a *Brady* violation. Pursuant to *Brady*, the government is required to disclose all evidence favorable to the defendant which is "material either to guilt or punishment." *Brady*, 373 U.S. at 87; *see also United States v. Nagra*, 147 F.3d 875, 881 (9th Cir.1998). The government's *Brady* obligations continue through the time of the sentencing hearing. *See East v. Scott*, 55 F.3d 996, 1002–04 (5th Cir.1995) (discussing a claimed Brady violation during the sentencing phase).

The district court agreed with Nikrasch that the government committed a *Brady* violation. Nikrasch argues, however, that district court erred as to the "scope of the *Brady* violations and as to the remedy."

As to his "scope" argument, Nikrasch fails to identify what evidence he thinks was not, but should have been, included in the district court's order. Nikrasch's argument that the court's order was under-

inclusive is unsupported by specific allegations or the record.

As to his "remedy" argument, Nikrasch claims that the district court should have recognized that the *Brady* violation constituted a valid reason for him to withdraw his guilty plea. As discussed below, this argument is without merit.

## II. Motion to Withdraw Guilty Plea

First, Nikrasch contends that the district court erred in denying his motion to withdraw his guilty pleas on counts two and nine because his pleas were not intelligently and voluntarily made. Nikrasch claims that the government's failure to disclose the Rule 16 and *Brady* material prior to his guilty pleas prevented him from making an informed decision to plead guilty, and that if he had been aware that the government intended to introduce evidence of relevant conduct at sentencing that would increase his sentence, he would not have pled guilty. Nikrasch also argues that the government's withholding of evidence rendered defense counsel's performance constitutionally ineffective in that she was uninformed when she advised him to enter a guilty plea. Finally, Nikrasch claims that if he were allowed to withdraw his guilty plea, he would have raised an outrageous government misconduct charge.

### B. Voluntariness of Plea

Federal Rule of Criminal Procedure 32(e) provides that "[i]f a motion to withdraw a plea of guilty or nolo contendere is made before sentence is imposed, the court may permit the plea to be withdrawn if the defendant shows any fair and just reason."

■ Guilty pleas are valid only if made voluntarily and intelligently. *Brady v. United States,* 397 U.S. 742, 747, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). A defendant challenging the voluntariness of a guilty plea in a motion to vacate the plea may assert a *Brady* claim. *Sanchez v. United States,* 50 F.3d 1448, 1453 (9th Cir.1995). However, even if the unproduced evidence contained *Brady* material, the fact that Nikrasch did not have this material at the time he pled guilty does not automatically entitle him to withdraw his guilty plea. Rather, the standard for assessing the effect on a guilty plea of a violation of the government's duty under *Brady* is whether there is a "reasonable probability" that but for the failure to disclose the *Brady* material, the defendant would have refused to plead guilty and would have gone to trial. *Kyles v. Whitley,* 514 U.S. 419, 435, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995); *Nagra,* 147 F.3d at 881.

■ The district court did not err in determining that any withheld evidence was not material to defendant's decision to plead guilty. The record fully supports the conclusion that a jury would have been presented with strong evidence that Nikrasch was the individual who passed a counterfeit note at the Staples store. For instance, the government had evidence that Nikrasch was driving a van containing counterfeit currency and was in possession of a tapewriter that had been purchased at the Staples store with counterfeit currency, as well as a Staples receipt reflecting the purchase. Counterfeit currency was later recovered from the Staples store. Given the strength of the evidence against Nikrasch, his assertion that he would not have pleaded guilty is unpersuasive.

■ Nikrasch's argument that he would not have pleaded guilty if he had known that the government intended to produce evidence of relevant conduct that could result in his "spending most of the rest of his life in prison" is also unavailing. *See Shah v. United States,* 878 F.2d 1156, 1162 (9th Cir.1989) (fear of receiving a harsh

sentence standing alone is not a "fair and just" reason to withdraw a plea).

### C. Ineffective Assistance of Counsel

A defendant claiming ineffective assistance of counsel must demonstrate (1) that counsel's actions were outside the range of professionally competent assistance, and (2) that defendant was prejudiced by reason of counsel's actions. *Strickland v. Washington*, 466 U.S. 668, 687–690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Anderson v. Calderon*, 232 F.3d 1053, 1084 (9th Cir.2000).

▮▮▮▮ Within the context of a motion to withdraw a guilty plea, a defendant seeking to show ineffective assistance must establish that the "ineffective performance 'affected the outcome of the plea process ... [such] that absent the erroneous advice, [defendant] would have insisted on going to trial.'" *United States v. Baramdyka*, 95 F.3d 840, 844 (9th Cir.1996) (quoting *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)). Whether the defendant would have insisted on going to trial is an evaluation that must be made objectively. *Hill*, 474 U.S. at 59–60.

▮▮▮▮ As the district court stated, defense counsel's recommendation to Nikrasch was reasonable considering the strength of the evidence against him. Additionally, defense counsel was aware at the time of the change of plea that the government believed the amount of loss attributable to Nikrasch was greater than $120,000 and that it planned to continue its investigation into the passing of an even greater sum. Accordingly, it is unlikely that defense counsel would have altered her recommendation even if she had been in possession of the withheld material.

### D. Outrageous Government Misconduct

▮▮▮▮ A district court may dismiss an indictment where the government's investigatory or prosecutorial conduct violates a defendant's due process rights. *United States v. King*, 200 F.3d 1207, 1213 (9th Cir.1999). To violate due process, government conduct must be "so grossly shocking and so outrageous as to violate the universal sense of justice." *Id.* (citations omitted).

▮▮▮▮ Nikrasch's outrageous government misconduct claim is without merit. His claim that the government withheld potentially exculpatory evidence does not amount to the type of conduct that violates "the universal sense of justice." *See, e.g., United States v. Steinberg*, 99 F.3d 1486, 1492 (9th Cir.1996).

### III. Increase in Sentencing Guideline Range

#### A. Correct Standard

Nikrasch argues that the amount of loss should have been proven by clear and convincing evidence rather than by a mere preponderance of evidence.

▮▮▮▮ The Sentencing Guidelines suggest that "use of a preponderance of evidence standard is appropriate ... in resolving disputes regarding application of the guidelines to the facts of a case." U.S.S.G. § 6A1.3, commentary. While this court has held that the preponderance standard generally satisfies due process, it has long been recognized that there is an exception when the sentencing factor has an extremely disproportionate effect on the sentence relative to the offense of conviction. *United States v. Restrepo*, 946

F.2d 654, 659 (9th Cir.1991) (en banc). This court has most recently re-visited the issue in *United States v. Jordan,* 256 F.3d 922, 927–929 (9th Cir.2001). In considering the totality of the circumstances, this court applied several factors set forth in *United States v. Valensia,* 222 F.3d 1173, 1182 (9th Cir.2000), *cert. granted, judgment vacated, and remanded by* —— U.S. ——, 121 S.Ct. 1222, 149 L.Ed.2d 133 (2001), to determine whether a given sentencing enhancement creates a disproportionate impact on sentencing. We consider (1) whether the enhanced sentence falls within the maximum sentence for the crime alleged in the indictment; (2) whether the enhanced sentence negates the presumption of innocence or the prosecution's burden of proof for the crime alleged in the indictment; (3) whether the facts offered in support of the enhancement create new offenses requiring separate punishment; (4) whether the increase in sentence is based on the extent of a conspiracy; (5) whether the increase in the number of offense levels is less than or equal to four; and (6) whether the length of the enhanced sentence more than doubles the length of the sentence authorized by the initial sentencing guideline range in a case where the defendant would otherwise have received a relatively short sentence. *See Jordan,* 256 F.3d at 928; *Valensia,* 222 F.3d at 1182.

 Here, the factors favor proof by a preponderance of the evidence. Because he admitted that he was responsible for passing $50,000 in counterfeit currency, Nikrasch's offense level was properly increased five levels pursuant to U.S.S.G. § 2F1.1(b)(1)(F) (amount of loss exceeding $40,000), resulting in a total offense level of 15 and an overall sentencing guideline range of 41–51 months. Based on its determination of relevant conduct, the district court calculated a total offense level of 19[1], resulting in a guideline range of 63–78 months. Thus, the increase in the number of offense levels is equal to four, and the length of the enhanced sentence (70 months) did not more than double the length of the sentence authorized by the initial sentencing guideline range.

We have repeatedly upheld use of the preponderance standard under similar circumstances and reserved the clear and convincing standard for more substantial enhancements. *See United States v. Johansson,* 249 F.3d 848, 856 (9th Cir.2001); *Valensia,* 222 F.3d at 1182; *cf. United States v. Hopper,* 177 F.3d 824, 833 (9th Cir.1999) (seven-level adjustment increased defendant's sentencing range from 24–30 months to 63–78 months); *United States v. Mezas de Jesus,* 217 F.3d 638, 642–644 (9th Cir.2000) (nine-level enhancement increased defendant's un-enhanced sentence of less than two years to nearly five years); *United States v. Munoz,* 233 F.3d 1117, 1127 (9th Cir.2000) (nine-level upward adjustment in sentence level for uncharged conduct); *Jordan,* 256 F.3d at 929 (nine-level enhancement increased defendant's sentencing rage from 70–87 months to 151–188 months).

**B. Sufficiency of Evidence**

 The district court's determination that Nikrasch was involved in the passing of counterfeit notes after his escape from prison was not clearly erroneous. There was sufficient evidence to support a find-

---

1. Although a loss in excess of more than $500,000 results in a ten-level increase pursuant to U.S.S.G. § 2F1.1(b)(1)(K), the total offense level increased only four levels rather than five due to a multiple count adjustment calculation.

ing that Nikrasch was so involved. For example, the district court noted that gloves with green ink residue were found in the van that Nikrasch was driving when arrested and that the manufacturing equipment had indications of recent use.

### IV. 60–Month Sentence on Escape Count

■ Finally, Nikrasch contends that the district court erred when it sentenced him to 60 months on Count One of the indictment. Nikrasch argues that the sentence was improper because the district court failed to give a specific reason for the imposition of a sentence outside of the guideline range.

Nikrasch's argument is without merit. The commentary to United States Sentencing Guidelines § 5G1.2, which establishes the procedure for determining the specific sentence to be imposed on each count in a multiple-count case, states that "[u]sually, at least one of the counts will have a statutory maximum adequate to permit imposition of the total punishment as the sentence on that count. The sentence on each of the other counts will then be set at the lesser of the total punishment and the applicable statutory maximum, and be made to run concurrently with all or part of the longest sentence." Here, the statutory maximum for each counterfeit currency count is 15 years (180 months). 18 U.S.C. § 472. The statutory maximum for the escape count is five years (60 months). 18 U.S.C. § 751. As the total punishment imposed on the counterfeit currency counts was 70 months, the district court did not err by imposing a 60–month sentence as to the escape count.

* This panel unanimously finds this case suitable for decision without oral argument. See

### CONCLUSION

For the foregoing reasons, Nikrasch's conviction and sentence are AFFIRMED.

