**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

AARON MICHAEL HYMAS,
*Defendant-Appellant*.

No. 13-30239

D.C. No.
1:12-cr-00045-
EJL-1

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

TIFFANY KIM HYMAS,
*Defendant-Appellant*.

No. 13-30240

D.C. No.
1:12-cr-00045-
EJL-2

OPINION

Appeal from the United States District Court
for the District of Idaho
Edward J. Lodge, District Judge, Presiding

Argued and Submitted
November 19, 2014—Portland, Oregon

Filed March 25, 2015

Before: Richard R. Clifton, Milan D. Smith, Jr.,
and Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge Clifton

**SUMMARY**[*]

**Criminal Law**

The panel vacated Aaron Hymas's sentence, and affirmed the district court's restitution order as to Aaron and Tiffany Hymas, in a case in which Aaron and Tiffany each pled guilty to one count of wire fraud in connection with making false statements in a mortgage loan application.

The panel held that there were no serious due process concerns that required application of a clear and convincing evidence standard, rather than a preponderance of the evidence standard, to determine the extent of loss attributable to the loan that was the subject of Aaron's conviction, where Aaron admitted the facts of the fraud that caused the loan to be made and knew the size of the loan, which defined the potential extent of the loss.

The panel held that before applying an 8-level increase that more than doubled the Sentencing Guidelines range of imprisonment, the district court should have applied the clear and convincing standard to determine the amount of the losses from loans that were not the subject of Aaron's conviction, where Aaron was not charged with a conspiracy, pled guilty only to one count of fraud regarding a specific loan transaction, and had neither need nor opportunity to contest the alleged conspiracy. The panel could not say that the error was harmless.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel rejected Aaron's arguments regarding calculation of losses from the loans. The panel held that the district court correctly calculated the losses by taking the principal amount of the loan and subtracting any credits from the subsequent sale of the property, and did not err by considering the losses submitted by successor lenders who had purchased the loans.

The panel held that the district court did not err in calculating Aaron's and Tiffany's respective restitution amounts. The panel held that the record supports (1) holding Aaron responsible for losses resulting from loan applications submitted under the names of Tiffany and his brother-in-law in addition to the loans in his name, and (2) determinations that the lenders listed in the presentence report suffered losses that were directly and proximately caused by the Hymases' conduct. The panel rejected as foreclosed by *Robers v. United States*, 134 S. Ct. 1854 (2014), the Hymases' argument that the amount of restitution is too high because the drop in the market, not the fraud on the loan applications, was responsible for the lenders' losses.

The panel remanded for further proceedings.

## COUNSEL

Marcus R. Mumford (argued), Mumford PC, Salt Lake City, Utah , for Defendants-Appellants.

Syrena C. Hargrove (argued) and Wendy J. Olson, Assistant United States Attorneys, Boise, Idaho, for Plaintiff-Appellee.

## OPINION

CLIFTON, Circuit Judge:

Aaron and Tiffany Hymas were each convicted, pursuant to plea agreements, of one count of wire fraud under 18 U.S.C. § 1343. Aaron[1] appeals his sentence of 24 months' imprisonment, contending that facts found by the district court in sentencing should have been subject to the clear and convincing standard of proof rather than the preponderance of the evidence standard that the district court applied, because of the disproportionate impact of those facts on the sentence that was imposed. We agree, in part, vacate that sentence, and remand to the district court for further proceedings. Both defendants also appeal the district court's orders requiring restitution. We affirm those orders.

## I. Background

Aaron and Tiffany Hymas are a married couple. They partially owned and ran two businesses in the housing industry, Crestwood Construction and OPM Enterprises. In order to acquire financing, the Hymases and their business partner developed a plan to borrow money to construct houses, sell them, and use the proceeds to pay off the loans, ideally leaving a profit.

It was alleged, however, that many of the mortgage loan applications submitted by the defendants from 2005 to 2007 were fraudulent. Indictments alleged that the Hymases made false statements related to their employment, employment

---

[1] To avoid confusion we refer to the defendants individually by their first names.

income, and rental income in the applications for twenty loans. Five of the loan applications listed Aaron as the borrower, thirteen listed Tiffany, and two listed Allen Bollschweiler, the husband of Aaron's sister.

Both defendants pled guilty to one count of wire fraud pursuant to plea agreements that provided that the other counts would be dismissed. Specifically, each defendant pled guilty to a charge of wire fraud regarding a March 28, 2007 loan to Tiffany in the amount of $295,600, identified as Count Four in both indictments. In the plea agreements, the defendants admitted that identified statements "were false and material to the loan application, and that [he or she] knew that they were false at the time [he or she] made them or caused them to be made." Each plea agreement specified certain statements that were made in the loan application though known to be false. Aaron's agreement, for instance, specified the following misrepresentations:

> 1) Tiffany Hymas was employed by OPM Enterprises with 2.6 years on the job.
>
> 2) Tiffany Hymas had base employment income of $42,500/month, plus commissions of $30,000/month for a total of $72,500/month.
>
> 3) Tiffany Hymas had gross rental income, as follows: $4,350/month on 6097 Moose Creek, Meridian, Idaho; $4,100/month on 5035 N. Spangle in Meridian, Idaho; $2,150/month on 7243 E. Hampshire Lane, in Nampa, Idaho; $4,000/month on 11 632 W. Hollandale in Boise, Idaho.

It was further agreed that the loan was funded based on the above misrepresentations.

A presentence report ("PSR") was prepared for each defendant. For Aaron, the PSR calculated the total loss as $3,689,953.73. The loss attributed to the Count Four loan was $162,758.79. The rest represented losses allegedly suffered by lenders on other loans, including loans that were the subject of counts that were dismissed. Losses from these loans were included because other "relevant conduct," separate from the specific activity that is the subject of the criminal conviction, may be considered in imposing a sentence. *See* U.S.S.G. § 1B1.3.

Adding the losses from other loans substantially increased the proposed Guidelines sentencing range calculated in the PSR. The base offense level for Aaron's conviction under the Sentencing Guidelines was 7, but the loss amount as determined in the PSR increased that level by 18, to a total of 25. Following a reduction of 3 levels for acceptance of responsibility, the PSR determined that Aaron's total offense level was 22. With a criminal history category of I, Aaron's Guidelines imprisonment range was 41 to 51 months.

Aaron filed objections to the PSR loss calculation. He contested the relevant conduct, the proper burden of proof, the number and identification of victims, and the loss amount for sentencing. He also contested the loss amount and the proper victims for restitution. The district court held a three-day evidentiary hearing to resolve the factual issues.

Following the hearing, the district court issued a written order. Although Aaron argued that the clear and convincing evidence standard applied, the court explicitly held that the

burden of proof that applied was preponderance of the evidence. The court applied that standard to determine the total loss amount for the purpose of calculating Aaron's sentence, including losses from other loans as relevant conduct. The court found that Aaron Hymas had committed fraud in the nineteen other loan applications and that the total loss amount was $3,416,337.97, slightly less than the amount calculated in the PSR. The district court agreed with the PSR's calculation of the Guidelines imprisonment range as 41 to 51 months. The district court subsequently sentenced Aaron to 24 months in prison.

The amount of restitution proposed by the PSRs for each defendant was $2,891,866.34. Aaron's attorney specifically objected to that calculation, but Tiffany's did not. The district court ultimately ordered restitution in the amounts of $1,520,296.77 for Aaron and $667,505.42 for Tiffany.

## II. Aaron's Sentence

As described above, the district court applied the preponderance of the evidence standard to calculate the total loss amount resulting from Aaron's relevant conduct. Aaron contests the district court's use of that standard, arguing that the clear and convincing standard should have been applied because the loss enhancements had a disproportionate impact on the length of his sentence.

District courts generally use the "preponderance of the evidence standard of proof when finding facts at sentencing, such as the amount of loss caused by a fraud." *United States v. Treadwell*, 593 F.3d 990, 1000 (9th Cir. 2010). The higher clear and convincing standard may apply, however, "when a sentencing factor has an extremely disproportionate effect on

the sentence relative to the offense of conviction." *United States v. Mezas de Jesus*, 217 F.3d 638, 642 (9th Cir. 2000) (citing *United States v. Restrepo*, 946 F.2d 654, 659 (9th Cir. 1991) (en banc)); *see also Treadwell*, 593 F.3d at 1000. Particularly "where a severe sentencing enhancement is imposed on the basis of uncharged or acquitted conduct, due process may require clear and convincing evidence of that conduct." *Treadwell*, 593 F.3d at 1000.

Our precedents "have not been a model of clarity in deciding what analytical framework to employ when determining whether a disproportionate effect on sentencing may require the application of a heightened standard of proof." *United States v. Berger*, 587 F.3d 1038, 1048 (9th Cir. 2009). We have indicated that, "where the sentencing enhancements are based on . . . the offense of conviction," the preponderance of the evidence standard is sufficient. *Id*. (citing *United States v. Harrison-Philpot*, 978 F.2d 1520, 1524 (9th Cir. 1992)) (internal quotation marks omitted). We have also held that "there is no bright-line rule for the disproportionate impact test;" instead, the court examines the "totality of the circumstances" using six factors first articulated in *United States v. Valensia*, 222 F.3d 1173 (9th Cir. 2000) ("*Valensia* factors").[2] *Berger*, 587 F.3d at 1048 (citing *United States v. Jordan*, 256 F.3d 922, 928 (9th Cir. 2001)) (internal quotation marks omitted).

Under the *Valensia* totality of the circumstances test, six factors, none of which is dispositive, guide the determination

---

[2] Our opinion in *Valensia* was vacated and remanded by the Supreme Court, *see United States v. Valensia*, 532 U.S. 901 (2001), but we have continued to use the factors articulated in the decision.

of whether a sentencing factor has a disproportionate impact on the sentence:

> (1) whether the enhanced sentence falls within the maximum sentence for the crime alleged in the indictment; (2) whether the enhanced sentence negates the presumption of innocence or the prosecution's burden of proof for the crime alleged in the indictment; (3) whether the facts offered in support of the enhancement create new offenses requiring separate punishment; (4) whether the increase in sentence is based on the extent of a conspiracy; (5) whether an increase in the number of offense levels is less than or equal to four; and (6) whether the length of the enhanced sentence more than doubles the length of the sentence authorized by the initial sentencing guideline range in a case where the defendant would otherwise have received a relatively short sentence.

*Treadwell*, 593 F.3d at 1000.

We separate our consideration of the loss enhancement here into two parts: (1) losses attributed to the loan that was the subject of Count Four of the indictment, to which Aaron pled guilty, and (2) losses attributed to the other loans.

### 1. *Count Four Losses*

Aaron pled guilty to Count Four of the indictment, which involved a loan in the amount of $295,600. Applying the preponderance of the evidence standard, the district court

determined the loss to the lender on that loan to be $162,758.79. That loss, by itself, enhanced Aaron's total offense calculation under the Sentencing Guidelines by 10 levels. *See* U.S.S.G. § 2B1.1 (providing for a 10-level increase for losses over $120,000 but no more than $200,000).

Notwithstanding the increase in the sentence, the loss from Count Four stemmed from conduct for which Aaron was convicted, alleviating the due process concerns discussed above. The preponderance of the evidence standard was sufficient for determining the actual extent of that loss. *See Harrison-Philpot*, 978 F.2d at 1524.

We would reach the same conclusion applying the *Valensia* factors. The maximum sentence authorized for wire fraud was 20 years, and the sentence imposed was well below that. The loss enhancement did not negate the presumption of innocence or alter the burden of proof for wire fraud. *See Treadwell*, 593 F.3d at 1001. The facts offered in support of the loss enhancement did not create a new offense that would require separate punishment. *See id*. The fourth factor did not apply because Aaron was not convicted for conspiracy.

The fifth and sixth factors arguably favor use of the clear and convincing standard. The number of offense levels added under U.S.S.G. § 2B1.1 for a loss of more than $120,000 but not more than $200,000 was 10. In pleading guilty, Aaron did not acknowledge any particular loss amount, and that loss enhancement was over 4 levels. Similarly, the length of the Guidelines sentencing range based on that loss amount more than doubled the length of sentence authorized by the initial Guidelines range if no loss had been attributed to the

transaction.  Aaron argues that these two factors alone were sufficient to require the use of the heightened standard.

But the size of a loss enhancement, standing alone, does not compel the use of the clear and convincing standard. *Treadwell*, 593 F.3d at 1001–02.  In this instance, we conclude that there were no serious due process concerns that required application of a heightened standard, even considering the *Valensia* factors, to the extent that the sentence was based on the loan that was the subject of the conviction.  Aaron admitted the facts of the fraud that caused the loan to be made.  He also knew the size of the loan, and that defined the potential extent of the loss.  In that situation it was not necessary to apply a heightened standard to protect against a violation of due process.

### 2.  *Losses from Other Loans*

The sentence imposed by the district court was not entirely based on the loan that was the subject of the conviction, however.  The district court also used losses from other loans to calculate Aaron's total offense level, increasing the total offense figure by an additional 8 levels.  Based on the principles articulated above, the clear and convincing standard of proof should have been applied to determine the amount of the losses from the other loans.

Aaron did not plead guilty to fraud for the other loans. He was not charged with a conspiracy, nor did he admit in his plea agreement that he had participated in a scheme to defraud involving multiple transactions.  Losses from these loans were based on conduct for which he was not convicted. Aaron did not have a guilt-phase trial where the government

was required to prove beyond a reasonable doubt that he committed fraud on the other loan applications.

Similar to the analysis of Count Four, the fifth and sixth *Valensia* factors support the use of the heightened standard for the other loans, even though the first four factors may not require that result. Inclusion of the losses from the other loans ultimately resulted in an increase of 8 offense levels, from 10 (based on the loss from the Count Four loan by itself) to 18. This additional 8-level increase more than doubled the Guidelines imprisonment range. Under our precedents, we conclude that the district court should have employed a heightened clear and convincing standard of proof with regard to the losses from those other loans.

In *United States v. Munoz*, for example, we held that the district court was required to use the clear and convincing evidence standard when calculating losses from uncharged conduct. 233 F.3d 1117, 1127 (9th Cir. 2000), *superseded on other grounds by statute as stated in United States v. Van Alstyne*, 584 F.3d 803, 817–18 (9th Cir. 2009). Two defendants were indicted on ten counts but convicted of only two counts of fraud in connection with specific sales of bus shelters as part of a Ponzi scheme. *Id.* at 1123. The district court, applying a preponderance of evidence standard, included within the loss calculation the losses from hundreds of sales made to other investors not included in the two counts of conviction. *Id.* at 1124. We vacated the sentence and remanded for resentencing, holding that, while the sales to the other investors were relevant conduct, the heightened standard of proof should have been used because the enhancement had a "disproportionate effect on the sentence." *Id*. at 1127. The same is true here.

The district court in this case concluded that the appropriate standard of proof was preponderance of evidence based upon a line of cases that applied that lower standard when determining the extent of losses from a conspiracy. The decisions cited by the district court – *Treadwell*, 593 F.3d at 1001; *Berger*, 587 F.3d at 1048–49; and *United States v. Armstead*, 552 F.3d 769, 777 (9th Cir. 2008) – hold that where losses are based on the extent of a criminal conspiracy, those losses need not be proven by clear and convincing evidence because the defendants had the opportunity at trial to challenge evidence of the extent of the fraud conspiracy.

In this case, however, the government did not charge Aaron with a conspiracy to defraud that included the other acts of fraud alleged in the indictment. He only pled guilty to one count of fraud regarding a specific loan transaction. He had neither need nor opportunity to contest the alleged conspiracy, and he cannot be sentenced using the lower standard as if he had challenged a conspiracy charge.

To be sure, the allegations against the Hymases bore similarities to a conspiracy, and the multiple counts resembled each other by alleging similar misrepresentations in similar loan applications. But the representations were not identical in all applications. Most of the losses included in the district court's calculation were based on loans that did not contain the specific false representations in Count Four acknowledged in the Plea Agreement. Even as to the loan applications that included the same statements, Aaron argues with justification that his admission that the statements were false in 2007 did not mean he admitted that those same statements were false in earlier years, before the family's financial circumstances deteriorated.

The government argues that, even if the district court applied the wrong standard, its decision to impose a 24-month sentence was harmless beyond a reasonable doubt because the sentence varied significantly below the guidelines range. We decline to engage in such guesswork. It is true that the district court might have made the same loss calculation applying the clear and convincing standard, but it might not have, either. The court made a point of stating that it was applying the preponderance standard, and the court's emphasis on the standard could imply that a higher standard would have resulted in a different loss calculation. Sometimes a district court says in finding a loss amount that it would reach the same result under either standard, but the court in this instance did not.

Similarly, the district court might have imposed the same sentence even if it had calculated a lower loss figure under the clear and convincing standard and, as a result, a lower sentencing Guidelines range, but that possible outcome is too uncertain for us to rely upon it. It is also inconsistent with our normal approach to sentencing. "[T]he district court must correctly calculate the recommended Guidelines sentence and use that recommendation as the 'starting point and initial benchmark.'" *United States v. Munoz-Camarena*, 631 F.3d 1028, 1030 (9th Cir. 2011) (per curiam) (quoting *Kimbrough v. United States*, 552 U.S. 85, 108 (2007)) (internal quotation marks omitted). We cannot say on this record that the failure to calculate the correct recommended Guidelines sentence was harmless error because the district court's analysis for the extent of the variance was not based on the correct range. *Id.* at 1030–31. Accordingly, we vacate Aaron Hymas's sentence and remand the matter to the district court. On remand, the court should apply the clear and convincing standard in calculating losses attributable to the other loans.

### 3. Calculation of Losses from Loans

Aaron also argues that the district court erred by using the amount realized from deficiency sales to calculate the losses from the loans. We conclude that the district court correctly calculated the losses by taking the principal amount of the loan and subtracting any credits from the subsequent sale of the property. *See United States v. Morris*, 744 F.3d 1373 (9th Cir. 2014). Similarly, the district court did not err by considering the losses submitted by successor lenders who had purchased the loans. The losses to those lenders are considered reasonably foreseeable pecuniary harm because the lenders purchased the loans "without an awareness of [their] true value due to . . . fraud." *United States v. Yeung*, 672 F.3d 594, 603 (9th Cir. 2012), *overruled on other grounds by Robers v. United States*, 572 U.S. –, 134 S. Ct. 1854 (2014)). Although *Yeung* examined proximate cause in the context of the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A, we see no reason why its reasoning would not apply to determine losses in the sentencing context.

## III.    Restitution Order

The court reviews de novo the legality of a restitution order, including the district court's valuation method. *Yeung*, 672 F.3d at 600. Factual findings supporting an order of restitution are reviewed for clear error. *United States v. Chao Fan Xu*, 706 F.3d 965, 993 (9th Cir. 2013).[3]

---

[3] Tiffany did not file objections to the PSR. The failure to object might otherwise call for review under the "plain error" standard. We need not consider that possibility, however, because we conclude that the district court did not err at all. For a similar reason, we reject Tiffany's argument alleging ineffective assistance of counsel, discussed below at 17–18.

The Mandatory Victims Restitution Act requires that defendants be ordered to pay restitution to any victim "directly and proximately harmed as a result of the commission of an offense." 18 U.S.C. § 3663A(a)(2).[4] The district court properly determined that Aaron owed $1,520,296.77 and Tiffany owed $667,505.42 in restitution.

While the district court limited the restitution Tiffany owed to the amount in the loan applications submitted in her name, the court held Aaron responsible for losses resulting from loan applications submitted under the names of Tiffany and his brother-in-law in addition to the loans in his name because he orchestrated all the loans. The testimony in the record supports the district court's findings that Aaron was responsible for making the fraudulent statements on the loan applications even if he himself did not sign them. Additionally, Aaron's guilty plea conviction concerned a loan in Tiffany's name.

The record also supports the district court's determinations that the lenders listed in the PSR suffered losses that were directly and proximately caused by the Hymases' conduct. The Hymases argue that successor lenders were not victims entitled to restitution. This court has already considered and rejected the argument that the sale of loans to successive lenders breaks the chain of causation between fraud on a loan application and the resulting loss. The Hymases' fraud on the original loan application proximately harmed each successor lender because that

---

[4] The standard of proof for restitution proceedings is preponderance of the evidence, as opposed to the standard of clear and convincing evidence required for a sentencing enhancement with a disproportionate impact. 18 U.S.C. § 3664(e).

lender purchased the loan "without an awareness of its true value due to [the] fraud." *See Yeung*, 672 F.3d at 603.

The Hymases also argue that the loan servicers listed in the PSR did not themselves suffer losses. This argument was not presented to the trial court, and it cannot be raised for the first time on appeal. *See United States v. Napier*, 463 F.3d 1040, 1045–46 (9th Cir. 2006). Although we may consider newly-raised issues that are "purely legal," this argument is not purely legal because it requires fact-finding as to the terms between the servicing entities and the successor holders of the loan.[5]

The Hymases further argue that the amount of restitution is too high because the drop in the market, not the fraud on the loan applications, was responsible for the lenders' losses. The Supreme Court has squarely rejected this argument, concluding that fluctuations in property values are "common" and "foreseeable," and that a drop in the market does not sever the link between the fraud and the lenders' losses. *Robers*, 134 S. Ct. at 1859.

In connection with her challenge to the restitution order, Tiffany argues that her appointed counsel in the proceedings below was ineffective by failing to object to the loss and restitution amount presented in the PSR. Although it seems doubtful that trial counsel's performance could have been deficient because the district court substantially decreased her

---

[5] The servicing entities, even if they do not own the loan outright, may be considered to be the entity "designated by the owner" to receive the restitution. 18 U.S.C. § 3663(b)(1)(A) (The court may order a defendant to "return the property to the owner of the property or someone designated by the owner.")

restitution amount from the figure proposed in the PSR, we need not address that question because we have already concluded that the district court did not err with respect to calculating Tiffany's restitution amount.   Trial counsel's objection would not have produced a different result. *See Walker v. Martel*, 709 F.3d 925, 942 (9th Cir. 2013).

## IV.    Conclusion

We vacate Aaron Hymas's sentence and remand to the district court for further proceedings.  We affirm the district court's restitution order as to both defendants.

**AFFIRMED   IN   PART,   VACATED   AND REMANDED IN PART.**