**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Pedro MEZAS DE JESUS,**
**Defendant–Appellant.**

No. 98–50639.

United States Court of Appeals,
Ninth Circuit.

Submitted Sept. 13, 1999[1]

Filed June 16, 2000

---

1. The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Monica Knox, Federal Public Defendant, Los Angeles, California, for the defendant-appellant.

Marc R. Greenberg, Assistant United States Attorney, Santa Ana, California, for the plaintiff-appellee.

Before: FLETCHER, PREGERSON, Circuit Judges, and WEINER, Senior District Judge.[2]

PREGERSON, Circuit Judge:

Pedro Mezas de Jesus was convicted in 1998 of being an undocumented immigrant in possession of a firearm in violation of 18 U.S.C. § 922(g)(5). At sentencing, the government argued that Mezas de Jesus committed this offense during a purported, uncharged kidnaping. The sentencing court applied the preponderance of the evidence standard and found that Mezas de Jesus possessed a firearm in connection with a kidnaping. On this basis, the court sentenced him under the kidnaping guideline, U.S. Sentencing Guidelines Manual

---

**2.** The Honorable Charles R. Weiner, Senior District Judge for the Eastern District of Pennsylvania, sitting by designation.

("U.S.S.G.") § 2A4.1 (1998), instead of the guideline governing possession of a firearm, U.S.S.G. § 2K2.1(a)(6). As a result, Mezas de Jesus received a nine-level upward adjustment in offense level and was sentenced to 57 months of imprisonment. On appeal, he argues that the district court erred in applying the preponderance of the evidence standard in finding that he used a firearm in connection with the uncharged kidnaping because that sentencing factor had an extremely disproportionate affect on his sentence. We agree.

## I. FACTUAL AND PROCEDURAL HISTORY

Mezas de Jesus was arrested, along with Antonio Cruz–Baires, and charged with kidnaping for ransom by the State of California. After the state dropped the kidnaping charges against both defendants, the federal government jointly tried and convicted each of them for unlawful possession of a firearm by an undocumented immigrant in violation of 18 U.S.C. § 922(g)(5). Cruz–Baires and Mezas de Jesus filed separate appeals.[3] At sentencing, Mezas de Jesus was sentenced to 57 months of imprisonment on the basis of the district court's finding that he possessed the firearm in connection with the uncharged kidnaping. Had the district court applied only the Sentencing Guideline for possession of a firearm by an undocumented immigrant, U.S.S.G. § 2K2.1(a)(6), his base offense level would have been 14, which, with a criminal history category of III, would have produced a sentencing range of 21 to 27 months.

The federal probation office in its Presentence Report (PSR) recommended the 57–month sentence based on the following Sentencing Guidelines calculations. First, probation cross-referenced the firearm possession offense to the base offense level for kidnaping (24 points), see U.S.S.G. §§ 2K2.1(c)(1)(A) (cross-reference); 2X1.1 (attempt, solicitation, or conspiracy); 2A4.1(a) (kidnaping); then probation decreased the offense level by one point for the release of the victim within 24 hours (23 points), see U.S.S.G. § 2A4.1(b)(4)(C); and then probation established a criminal history category of III. The sentencing range for offense level 23 and criminal history category III is 57 to 71 months.

Probation applied the kidnaping provision largely on the basis of hearsay contained in the police report of the investigating officers. Specifically, probation relied on the investigating officers' notes of statements purportedly made by the alleged kidnap victim, Pancho Aragon (Aragon), and his wife at various times during the investigation, and statements that Aragon and his wife claimed that the defendants made to them. In preparing the PSR, probation did not interview Aragon or his wife, and neither of them testified at trial because the district court precluded the government from presenting any testimony about the alleged kidnaping due to its potential prejudicial effect.

The record indicates that Aragon was a drug dealer and an associate of the defendants. According to the PSR, Aragon initially told the police that he and his wife had voluntarily gotten into a defendant's car to attend a wedding. Later he told the police that he was separated from his wife and kidnaped because he did not have the money to pay for the 3 kilos of the "boss's" cocaine that he had lost. His wife told the police that, although she was initially fearful of the defendants, she asked to go with them and that defendants agreed. She also told the police that her husband subsequently left her in one car and voluntarily went off with the defendants in another car. At no time did she suggest that the defendants were armed. Aragon, on the other hand, claimed that the defendants were armed and forcibly took him. Ara-

---

**3.** We affirmed Cruz–Baires's conviction in his separate appeal by memorandum disposition. *See United States v. Cruz–Baires*, No. 98– 50640, 2000 WL 642444 (9th Cir. May 18, 2000).

gon, who had bruises on the left side of his face and "burn" marks on both wrists when he spoke with the police, claimed that he was bound and beaten, and that his life was threatened if he did not pay back the "boss" by the following week.[4] Thereafter, Aragon told the police that the defendants untied him, disposed of their weapons, and started to drive him home when the police stopped the vehicle.[5]

Mezas de Jesus, through defense counsel, filed a sentencing memorandum in which he objected to the application of § 2A4.1 (kidnaping) because (1) the kidnaping was not supported by a preponderance of the evidence, and (2) he had not had an opportunity to cross-examine the witnesses to the alleged kidnaping. In the sentencing memorandum, Mezas de Jesus also demanded an evidentiary hearing so that he could cross-examine these witnesses.

At the sentencing hearing, the district court determined that Mezas de Jesus was entitled to an evidentiary hearing to determine whether a kidnaping had occurred. But the government reported that the whereabouts of Aragon and his wife were unknown and that they were unavailable to testify at an evidentiary hearing. The record does not indicate why the government could not locate the alleged victim and his wife or when they disappeared.

Because the alleged kidnap victim and his wife were unavailable, Mezas de Jesus withdrew his request for the hearing. He argued instead that the hearsay statements made by Aragon and his wife that were contained in the police report and recounted in the PSR should not be considered by the court because they were inherently unreliable[6] and insufficient to show by even a preponderance of the evidence standard that a kidnaping had in fact taken place. Mezas de Jesus further argued that because the uncharged and unproved kidnaping would have an extreme effect on his sentence, its use as a sentencing factor would become the "tail which wags the dog of the substantive offense."[7]

4. The record also indicates that a number of telephone calls were made to Aragon's wife and sister during the alleged kidnaping; some of which were made by Aragon himself. In fact, Aragon's wife told the police that Aragon made the first telephone call to her in response to her page, and that during that call he told her that he was "ok" and that he would "be back later." But she also told police that during a later telephone call a demand for money was made, allegedly as ransom. The government admitted in its sentencing papers that there was no evidence to suggest who made the alleged ransom demand and that it could have been Aragon or one of the defendants. After the alleged ransom demand, Aragon's wife telephoned the police.

5. According to the PSR, the police located the car by tracking the cellular telephone calls. The police pulled the vehicle over for a traffic violation. At the time of the traffic stop, the defendants were seated in the front passenger seat, Aragon was seated unbound in the rear passenger seat, and no weapons were present. Aragon told the police that the defendants had disposed of their guns at the banquet hall where they had taken him. Both defendants also told the police that they had guns in their possession on the day of the alleged kidnaping. Both guns were later recovered from the banquet hall. After the police learned that both defendants were illegal immigrants, defendants were charged with being illegal aliens in possession of firearms.

6. Because of their inherent unreliability, "[p]olice reports have generally been excluded [at criminal trials] except to the extent to which they incorporate firsthand observations of the officer." FED. R. EVID. 803(8)(B) advisory committee's note. The rule's

> legislative history indicates that ... "the reason for this exclusion is that the observations by police officers at the scene of the crime or the apprehension of the defendant are not as reliable as observations by public officials in other cases because of the adversarial nature of the confrontation between police and the defendant in criminal cases."

United States v. Orozco, 590 F.2d 789, 793 (9th Cir.1979) (quoting S.Rep. No. 93–1277 (1974), reprinted in, 1974 U.S.C.C.A.N. 7051, 7064) (holding that this exclusion did not apply to records of routine non-adversarial matters).

7. This metaphor, which derives from McMillan v. Pennsylvania, 477 U.S. 79, 88, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), has come to

After expressing some concern about the limited reliability of ·the "untested" hearsay testimony of the alleged victim and his wife, the inability of the government to produce these witnesses for cross-examination at an evidentiary hearing, and the absence of defense evidence rebutting the alleged victim's "story," the district court nonetheless accepted the probation office's recommendation and sentenced Mezas de Jesus to 57 months imprisonment.

On appeal, Mezas de Jesus argues, *inter alia,* that under the circumstances of his case, the district court should have applied a standard of proof higher than mere preponderance of the evidence before using the alleged kidnaping as a sentencing factor. We have jurisdiction under 28 U.S.C. § 1291.

## II. ANALYSIS

### A. Standard of Review

■ We review de novo the constitutionality of a sentence imposed under the Sentencing Guidelines. *See United States v. Estrada–Plata,* 57 F.3d 757, 762 (9th Cir.1995). Because "due process protects a defendant's interest in fair sentencing." *Restrepo II,* 946 F.2d at 659 (citing *McMillan,* 477 U.S. at 87–91, 92 n. 8, 106 S.Ct. 2411) we review the district court's application of the standard of proof at sentencing for harmless error beyond a reasonable doubt. *See Delaware v. Van Arsdall,* 475 U.S. 673, 680–81, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986) (holding that constitutional error is reversible unless "the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt") (citation omitted). We review the district court's factual findings at sentencing for clear error. *See United States v. Ladum,* 141 F.3d 1328, 1344 (9th Cir.1998).

### B. Standard of Proof

■ "[A]s a general rule [at sentencing] due process does not require a higher standard of proof than preponderance of the evidence to protect a convicted defendant's liberty interest in the accurate application of the Guidelines." *Restrepo II,* 946 F.2d at 661. However, "when a sentencing factor has an extremely disproportionate effect on the sentence relative to the offense of conviction . . . a higher standard of proof" may be required. *Id.* at 659–60 (citing *McMillan,* 477 U.S. at 87–91, 106 S.Ct. 2411). In a case decided after Mezas de Jesus was sentenced, we held that the government must prove such a sentencing factor by "clear and convincing" evidence. *United States v. Hopper,* 177 F.3d 824, 833 (9th Cir.1999) (quoting *Restrepo II,* 946 F.2d at 659), *cert. denied, McKendrick v. U.S.,* —— U.S. ——, 120 S.Ct. 1179, 145 L.Ed.2d 1086 (2000).

In *Hopper,* a jury convicted the defendants of, *inter alia,* conspiring "to obstruct the due and proper proceedings of law before the [Internal Revenue Service]." 177 F.3d at 829. The jury also acquitted one defendant, George Reed, of the additional charge of using violence to ·obstruct or impede the IRS's lawful proceedings. *See id.* at 832. Nevertheless, the district court upwardly adjusted Reed's sentence seven levels based on the violent activity for which he was acquitted. *See id.* at 833. "The seven-level adjustment increased [Reed's] sentencing range from 24–30 months to 63–78 months." *Id.*

In reversing the district court, we recognized the general rule that " 'a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence.' " *Id.* (quoting *United States v. Watts,* 519 U.S. 148, 157, 117 ·S.Ct. 633, 136 L.Ed.2d 554 (1997)). We nevertheless held that "[g]iv-

signify a sentencing factor that has a disproportionate effect and may require a higher standard of proof. *See United States v. Restre-*

po, 946 F.2d 654, 665 n. 1, 659–60 (9th Cir. 1991) (en banc) (*"Restrepo II "*), *overruling* 903 F.2d 648 (1990) (*"Restrepo I "*).

en the relative shortness of George Reed's sentence," a seven-level enhancement based on acquitted conduct that results in a "potential increase of 48 months satisfies the *Restrepo* extremely disproportionate impact test. Consequently, the district court erred in failing to apply the clear and convincing standard." *Id.*; *accord United States v. Kikumura*, 918 F.2d 1084, 1101–02 (3rd Cir.1990) (adopting the clear and convincing standard of proof for a sentencing factor that has become " 'a tail which wags the dog of the substantive offense.' " (quoting *McMillan*, 477 U.S. at 88, 106 S.Ct. 2411)).[8] We therefore vacated Reed's sentence and remanded for re-sentencing.

Here, Mezas de Jesus's sentence was enhanced *nine*-levels on the basis of an *uncharged* kidnaping. As a result, his sentencing range increased from 21–27 months to 57–71 months, which exposed him to a 36– to 44–month increase in imprisonment. Although Mezas de Jesus was sentenced at the low end of the enhanced sentencing range, he went from a "relatively short" sentence of less than two years to nearly five years based on an offense for which he was never even charged.

Thus on appeal even the government concedes that "the impact on [Mezas de Jesus's] sentence of the uncharged kidnaping may be reasonably viewed as similar to the impact of the acquitted conduct in *Hopper*." Appellee's Letter Brief at 3. Moreover, *Hopper* requires the evidence of the uncharged kidnaping to be established by clear and convincing evidence before it may be used to increase Mezas de Jesus's sentence. The district court failed to do so here.

■■■ In fact, it appears that the district court erred in finding that the government had established the uncharged kidnaping even by a preponderance of the evidence. We have previously emphasized "that the preponderance of the evidence standard is a meaningful one that requires the judge to be *convinced* by a preponderance of the evidence that the fact in question exists." *Restrepo II*, 946 F.2d at 661 (emphasis added) (internal quotation marks and citations omitted). Indeed, as we noted in *Restrepo II*, the Supreme Court declared that

> "[i]t is a misinterpretation [of the preponderance test] that it calls on the trier of fact merely to perform an abstract weighing of the evidence in order to determine which side has produced the greater quantum, without regard to its effect in convincing his mind of the truth of proposition asserted."

**8.** Six other circuits have indicated that a clear and convincing standard may be required in certain extreme circumstances. *See, e.g., United States v. Gigante*, 94 F.3d 53, 56 (2nd Cir.1996) (finding the preponderance standard to be "no more than a *threshold* basis for adjustments and departures" and suggesting in dicta that where conduct underlying multiple upward adjustments is at issue, the clear and convincing standard of proof or even beyond a reasonable doubt may be appropriate) (emphasis in original); *United States v. Mergerson*, 4 F.3d 337, 344 (5th Cir.1993) (recognizing in dicta that "there may be certain cases where a sentencing fact is a 'tail that wags the dog of the substantive offense' and might arguably require a finding beyond a reasonable doubt"); *United States v. Corbin*, 998 F.2d 1377, 1387 (7th Cir.1993) ("A higher standard might be called for only in the rare instance where a factual finding will result in a sentencing increase so great [that it be-comes the] tail which wags the dog of the substantive offense."); *United States v. Lam Kwong–Wah*, 966 F.2d 682, 688 (D.C.Cir. 1992) (declining "to foreclose the possibility that in extraordinary circumstances a clear and convincing standard may be required" at sentencing); *United States v. Townley*, 929 F.2d 365, 370 (8th Cir.1991) (indicating, without deciding, that a sentencing factor that produces an 18–level increase in a base offense level and a 7–fold increase in the permissible sentencing range may require clear and convincing evidence before it can be applied); *United States v. St. Julian*, 922 F.2d 563, 569 n. 1 (10th Cir.1990) (recognizing in dicta that "[i]f the difference between the guideline range and the departure sentence is great, the trial court should consider the implications of that disparity in determining the appropriate standard of proof for the facts considered in sentencing") (citations omitted).

*Id.* (quoting *In re Winship* 397 U.S. 358, 367–68, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (internal quotation marks and citations omitted)) (alteration in original).

And yet, here it appears that the district court focused on the quantum of evidence—not on the convincing force of the evidence—in finding that a kidnaping was proved by a preponderance of the evidence. The judge stated that

> [i]n my view, based on the evidence I have so far, the government's evidence preponderates because there isn't any on the other side. So it's easy for the government's evidence to preponderate as long as it's a little bit of evidence and I think there is, at minimum, a little bit of evidence.

Thus, in concluding that a kidnaping had taken place, the district court was apparently not convinced by the force of the evidence, but merely by the abstract weight of the evidence.

During the colloquy with counsel at sentencing, the district court had expressed doubts about the reliability of the government's "limited evidence": "All I have-the only thing I have is the statement of the victim [that is contained in the police reported and incorporated into the PSR]. . . . And so I have that limited evidence, and it is . . . untested in the sense that it hasn't been cross-examined and it's given . . . by the gentleman who is a drug dealer." But the evidentiary hearing was never held— not because of the convincing force of the evidence already before the court, but rather because the defense withdrew its request for the hearing when the government advised the court that it could not produce the alleged kidnap victim and his wife for cross-examination.

In contrast, where we have found that the preponderance of the evidence standard sufficiently protected a defendant's due process interests at sentencing, the evidence considered by the sentencing court was reliable and thoroughly "tested." *See, e.g., Restrepo I*, 903 F.2d at 650 (portion of three-judge panel opinion incorporated by reference in *Restrepo II*, 946 F.2d at 655) (witness to existence of sentencing factor testified both at trial and at sentencing); *United States v. Wilson*, 900 F.2d 1350, 1354–55 (9th Cir.1990) (noting that "the district court expressly relied on only reliable evidence and resolved any doubts about the reliability and use of the available information in favor of Wilson").[9]

▮ Further, it appears that the district court implicitly drew an adverse inference from Mezas de Jesus's silence at sentencing. Specifically, the court questioned whether Mezas de Jesus was even entitled to an evidentiary hearing given his silence: "So if the court is presented with a prima facie case by the government that a kidnaping occurred, wouldn't I have to see something from you like, for instance, a statement under oath from your client that it didn't happen, in order to require an evidentiary hearing?"

The Supreme Court, in a case decided *after* Mezas de Jesus was sentenced, held that a sentencing court may not, in determining facts relating to circumstances and details of a crime, draw an adverse inference from a defendant's silence. *See Mitchell v. United States*, 526 U.S. 314, 327–30, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999) (holding also that a guilty plea does not waive the Fifth Amendment privilege against self-incrimination at sentencing). The Court reasoned that:

> The normal rule in a criminal case is that no negative inference from the defendant's failure to testify is permitted. We decline to adopt an exception for the

---

**9.** The same level of reliability has been true of evidence considered in cases upholding cross-referencing pursuant to U.S.S.G. § 2K2.1(c). *See, e.g., United States v. Mun*, 41 F.3d 409, 412 (9th Cir.1994) (applying cross-referencing to offense other than that of conviction based on facts found after evidentiary hearing); *United States v. Humphries*, 961 F.2d 1421, 1422–23 (9th Cir.1992) (applying cross-referencing to offense other than that of conviction after defendant thoroughly cross-examined witnesses at sentencing hearing).

sentencing phase of a criminal case with regard to factual determinations respecting the circumstances and details of the crime.... Without question, the stakes are high: Here, the inference drawn by the District Court from petitioner's silence may have resulted in decades of added imprisonment. The Government often has a motive to demand a severe sentence, so the central purpose of the privilege-to protect a defendant from being the unwilling instrument of his or her own condemnation-remains of vital importance.

*Id.* at 327–29, 119 S.Ct. 1307 (internal quotations and citations omitted). Although Mezas de Jesus does not separately raise this issue on appeal, we conclude, after an independent review of the record, that the district court did draw an adverse inference from Mezas de Jesus's silence and that this error was a factor in its misapplication of the preponderance standard. The court stated: "You tell me [the unavailable witness's story is] not the true story. *I don't have any other evidence* as to a truer story." (Emphasis added).

 By focusing on the defendant's silence at sentencing and quantitatively weighing it against the government's "untested" evidence, the district court effectively shifted the burden of proof at sentencing to the defendant. In so doing, the district court erred. "The Government retains the burden of proving facts relevant to the crime at the sentencing phase and cannot enlist the defendant in this process at the expense of the self-incrimination privilege." *Mitchell,* 526 U.S. at 330, 119 S.Ct. 1307. " 'Any effort by the State to compel [the defendant] to testify against his will at the sentencing hearing clearly would contravene the Fifth Amendment.'" *Id.* at 326, 119 S.Ct. 1307 (quoting *Estelle v. Smith,* 451 U.S. 454, 463, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), noting that *Estelle* was a capital case, but "find[ing] no reason not to apply the principle to noncapital sentencing hearings as well") (alteration in original).

## III. CONCLUSION

In sum, the uncharged kidnaping had an " 'extremely disproportionate effect on [Mezas de Jesus's] sentence relative to the offense of conviction.'" *Hopper,* 177 F.3d at 833 (quoting *Restrepo II,* 946 F.2d at 659). Mezas de Jesus was charged and convicted of being an undocumented immigrant in possession of a firearm only. Yet he was sentenced as if he had used the firearm in connection with a kidnaping—an offense for which he was never charged let alone convicted. The uncharged kidnaping thus became the quintessential "tail which wags the dog of the substantive offense." *McMillan,* 477 U.S. at 88, 106 S.Ct. 2411. Accordingly, we hold that the district court erred in failing to apply the clear and convincing evidence standard before enhancing Mezas de Jesus's sentence nine-levels based on the uncharged kidnaping.

Moreover, even assuming that the preponderance of the evidence standard was adequate to protect Mezas de Jesus's due process interest in "fair sentencing," *Restrepo II,* 946 F.2d at 659, the district court failed to apply that standard correctly. Specifically, the district court determined that a kidnaping had taken place based on the quantum of evidence, not on the convincing force of the evidence. In so doing, the court deprived Mezas De Jesus of his due process interest in "the accurate application of the Guidelines within statutory limits." *Id.* Finally, by implicitly drawing an adverse inference from the defendant's silence and looking to the defendant to testify at sentencing against his will, the court violated Mezas de Jesus's Fifth Amendment privilege against self-incrimination.

Because we cannot find these constitutional errors to be harmless beyond a reasonable doubt, we vacate the district court's sentence and remand for resentencing. REVERSED and REMANDED.