**UNITED STATES of America,
Plaintiff—Appellee,**

v.

**Robert David BOWMAN, Defendant—
Appellant.**

No. 02–10665.

D.C. No. CR–98–0205–GEB.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 9, 2003.

Decided Nov. 10, 2003.

Paul J. Seave, USSC–Office of the U.S. Attorney, W. Douglas Sprague, United States Attorney, Sacramento, CA, for Plaintiff–Appellee.

Scott L. Tedmon, Law Offices of Scott L. Tedmon, Sacramento, CA, for Defendant–Appellant.

Before SCHROEDER, Chief Judge, O'SCANNLAIN, and TASHIMA, Circuit Judges.

MEMORANDUM *

David Bowman appeals his conviction and sentence for mail fraud in violation of 18 U.S.C. § 1341. Bowman contends that the district court erred in: (1) admitting evidence of his dealings with Capital Preservation Fund ("CPF"); (2) excluding evidence of his attempt to reinsure the investors in The Kentfield Group, LLC ("TKG"); (3) refusing to give his proposed "good faith" jury instruction; (4) its loss calculation; and (5) imposing two-level increases for supervision and abuse of position of trust. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and we affirm.[1]

■ **1.** Bowman did not object to the introduction of the CPF evidence at trial; therefore, we review only for plain error. *See Johnson v. United States*, 520 U.S. 461, 466–67, 117 S.Ct. 1544, 137 L.Ed.2d 718(1997). We conclude that it was not plain error for the district court to admit that evidence. *Id.* "[O]ther act' evidence need not meet the requirements of Rule 404(b) when it is 'inextricably intertwined' with the evidence concerning the crime with which the defendant was charged." *United States v. Matthews*, 240 F.3d 806, 817 (9th Cir.2000) (finding no plain error where evidence "could plausibly have been viewed" as being inextricably intertwined), *adopted by en banc court*, 278 F.3d 880, 882 (9th Cir.2002). Because Bowman's

TKG scheme could be viewed as a continuation of the CPF Ponzi scheme, the district court did not err in concluding that the CPF evidence was inextricably intertwined with evidence of the TKG scheme. *See United States v. Sayakhom*, 186 F.3d 928, 937–38 (9th Cir.1999) (finding two mail fraud schemes inextricably intertwined where second scheme was continuation of first, after first scheme failed), *amended by* 197 F.3d 959 (9th Cir.1999). The CPF evidence was also admissible under Rule 404(b) to prove Bowman's knowledge that the performance bonds from Berkston Insurance were worthless and his intent to defraud. The probative value of Bowman's prior experience with Berkston and Richard Vucenic was not substantially outweighed by any unfair prejudice from the evidence. *See* Fed.R.Evid. 403.

■ **2.** The district court did not abuse its discretion by excluding evidence of Bowman's attempts to find a replacement guarantor because his intent to repay fraudulently obtained funds is not a defense to mail fraud. *See United States v. Olson*, 925 F.2d 1170, 1175–76 (9th Cir. 1991) ("What matters ... is that [defendant] fraudulently obtained the use of others' money. Whether he intended that the effects of his fraud be permanent or temporary has no legal relevance."). Although Bowman's attempts to get a replacement guarantor after being contacted by Lloyd's of London may have been relevant to show that Bowman believed that Lloyd's had been reinsuring the bonds issued by Berkston, the evidence was properly excluded under Rule 403 because its limited probative value was substantially outweighed by the risk that it would focus the jury on the

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. Because the parties are familiar with the facts, we do not recite them here except as necessary to aid in understanding this disposition.

irrelevant issue of whether Bowman intended for investors to lose their funds.

■ 3. Bowman was not entitled to a separate "good faith" jury instruction because the district court properly instructed the jury on the intent required for a mail fraud conviction. *United States v. Dees*, 34 F.3d 838, 842–43 (9th Cir.1994) (finding a good faith instruction is not required if the jury is properly instructed regarding specific intent to defraud). The district court instructed the jury that Bowman could be convicted only if he "knew that the promises or statements were false" and if he "acted with intent to defraud." The jury was also instructed that intent to defraud "is an intent to deceive or cheat" and that "[f]raudulent intent may be shown by proof that a defendant made a representation with reckless indifference to its truth or falsity." Because the district court properly instructed the jury on the intent required for mail fraud, the instructions adequately covered the theory of Bowman's defense. He was not entitled to a "good faith" instruction.

■ 4. The district court did not clearly err in calculating the intended loss from the fraud. *See United States v. Scrivener*, 189 F.3d 944, 949 (9th Cir.1999) (amount of loss reviewed for clear error). The intended loss is calculated by the total amount of money put at risk by a Ponzi scheme. *United States v. Munoz*, 233 F.3d 1117, 1125–26 (9th Cir.2000). Bowman is accountable for all of the funds misappropriated in the TKG Ponzi scheme, not just the funds that were lost or that he did not intend to return. *See id.* (whether fraud produced returns "is irrelevant to calculating the intended loss"). It was not error to include the entire amount of funds collected by TKG in the amount of loss under U.S.S.G. § 2F1.1 (1997).

■ 5. The district court also did not clearly err by including the loss attributable to the CPF scheme in the total loss under § 2F1.1. *See United States v. Hahn*, 960 F.2d 903, 907 (9th Cir.1992) (reviewing for clear error whether conduct other than an offense of conviction is part of the same course of conduct under U.S.S.G. § 1B1.3(a)(2)). Uncharged conduct is part of the same course of conduct as the offense of conviction if "they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." U.S.S.G. § 1B1.3(a)(2), app. n. 9(B) (1997). The "essential components" of determining if uncharged conduct is includable as relevant conduct are "similarity, regularity, and temporal proximity." *Hahn*, 960 F.2d at 910.

While "[t]here is no precise ratio in which these components must exist in order to find conduct relevant," in this case, all three components are present. *United States v. King*, 200 F.3d 1207, 1216 (9th Cir.1999). First, the CPF scheme and the TKG scheme both involved false promises that investments were backed by Lloyd's and worthless bonds from Berkston. Second, the defrauding of investors by Bowman was also extremely regular—through CPF, Bowman defrauded 38 individuals over two years. Third, temporal proximity is present, because the CPF scheme collapsed immediately prior to the establishment of the TKG scheme, the two schemes even overlapped somewhat.

■ 6. Bowman argues that the district court should have required "clear and convincing" evidence of the uncharged conduct pursuant to *United States v. Mezas de Jesus*, 217 F.3d 638, 642–43 (9th Cir. 2000). Only, however, "when a sentencing factor has an extremely disproportionate effect on the sentence relative to the offense of conviction," is the clear and con-

vincing standard applied instead of the preponderance of the evidence standard. *Id.* at 642 (quoting *United States v. Restrepo*, 946 F.2d 654, 659 (9th Cir.1991) (en banc)). The inclusion of the CPF funds did not have "an extremely disproportionate effect" because it only raised Bowman's offense level by one, increasing his sentencing range from 78–97 months to 87–108 months. *See United States v. Jordan*, 256 F.3d 922, 927–29 (9th Cir.2001) (noting that two considerations for determining whether a sentencing factor had an extremely disproportionate effect are whether the factor increased the offense level by more than four and whether it doubled the length of the sentence authorized by the initial guideline range). Accordingly, the district court did not clearly err by including the CPF loss in calculating Bowman's sentence.

■ 7. It was also not clear error to find that Bowman was subject to a two-level enhancement under U.S.S.G. § 3B1.1(c) as an "organizer or leader." *United States v. Lopez–Sandoval*, 146 F.3d 712, 716 (9th Cir.1998). To be found an organizer or leader under § 3B1.1(c), a district court must determine whether the defendant "exercised some control over others involved in commission of the offense [or was] responsible for organizing others for the purpose of carrying out the crime." *United States v. Harper*, 33 F.3d 1143, 1151 (9th Cir.1994) (quoting *United States v. Mares–Molina*, 913 F.2d 770, 773 (9th Cir.1990)) (alteration in original). Bowman was the sole owner of TKG and completely directed his fraudulent investment scheme through the company. Moreover, there was sufficient evidence to support the district court's conclusion that Bowman exercised some control over Vucenic: Bowman knew that the bonds were not properly reinsured, and he told Vucenic to provide bond certificates as "window dressing"; Bowman created the actual bond certificates and directed them to Vucenic to sign; and after Lloyd's contacted Bowman regarding the bonds, Bowman asked Vucenic to supply documentation that Bowman could show to investors. The fact that Vucenic may have refused to do one or more things that Bowman requested does little to show that Bowman did not exercise "some control" over Vucenic in furtherance of defrauding investors. Therefore, the district court did not clearly err in applying the two-level enhancement under U.S.S.G. § 3B1.1(c) because Bowman was an organizer or leader of TKG and he supervised or directed Vucenic.

■ 8. Finally, the district court did not err in concluding that Bowman abused his position of trust and by applying a two-level enhancement under U.S.S.G. § 3B1.3. *See United States v. Medrano*, 241 F.3d 740, 746 (9th Cir.2001). Bowman does not dispute that he held a position of trust; instead, he argues that he did not abuse that position. This argument ignores the fact that a jury convicted Bowman of defrauding investors. Bowman lied about the type of investments that would be made with TKG funds and about Lloyd's involvement with the bonds. His deceptions were an abuse of his position of trust and the district court properly applied the two-level enhancement under § 3B1.3.

Bowman's conviction and sentence are **AFFIRMED.**