**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff - Appellee*,

v.

BRANDON WADE KURNS,

*Defendant - Appellant*.

No. 23-3779

D.C. No.
6:23-cr-00001-
BMM-1

OPINION

Appeal from the United States District Court
for the District of Montana
Brian M. Morris, Chief District Judge, Presiding

Argued and Submitted October 21, 2024
Portland, Oregon

Filed February 20, 2025

Before: David F. Hamilton,[*] Lawrence VanDyke, and
Holly A. Thomas, Circuit Judges.

Opinion by Judge Hamilton

---

[*] The Honorable David F. Hamilton, United States Circuit Judge for the
Court of Appeals, Seventh Circuit, sitting by designation.

**SUMMARY**[**]

**Criminal Law**

The panel affirmed the district court's judgment in a case in which Brandon Wade Kurns pleaded guilty to being a felon in possession of a firearm.

Kurns argued that the district court erred by starting with a base offense level of 20 pursuant to U.S.S.G. § 2K2.1(a)(4)(B)(i)(I), which applies when the offense involved a "semiautomatic firearm that is capable of accepting a large capacity magazine." Kurns asserted that testimony about a magazine's capacity based exclusively on an expert's evaluation of a magazine's appearance in a photograph did not provide sufficiently clear and convincing proof. The panel explained that an ATF's agent's inability to identify the precise make and model of the weapon pictured in a surveillance photograph or to rule out entirely the possibility that the pictured weapon was a non-lethal replica or a .22 caliber is not dispositive. The panel held that the evidence was sufficient to support a finding by a preponderance of the evidence that the firearm that Kurns possessed qualified for the § 2K2.1(a)(4)(B)(i)(I) enhancement.

Kurns argued that the district court erred by applying an enhancement under U.S.S.G. § 2K2.1(b)(1)(B) for possessing eight or more firearms.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Kurns first objected that, without corroborating video evidence, the ATF transfer forms he signed without authorizing the sales are insufficient to prove he possessed the firearms in question. The panel held that given Kurns' signatures on the transfer forms and the ATF agent's testimony about the standard business practices of the pawn shop at which Kurns worked, the district court did not clearly err in determining that a preponderance of the evidence supported the finding that Kurns exercised the requisite control over the firearms to establish, at a minimum, constructive possession.

Kurns also objected that, in applying the § 2K2.1(b)(1)(B) enhancement, the district court violated his Fifth Amendment privilege against self-incrimination by drawing an adverse inference from his silence during sentencing. Observing that there is no evidence that the district court weighed Kurns' silence in determining his sentence, the panel held that no Fifth Amendment violation occurred.

Because the arguments were available to him at every previous stage of this case, the panel declined to consider Kurns' Second Amendment challenge to his conviction, based on *New York State & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), raised for the first time after completion of appellate briefing.

## COUNSEL

Kelsey Sabol (argued) and Tim Tatarka, Assistant United States Attorneys, Office of the United States Attorney, United States Department of Justice, Billings, Montana; Paulette L. Stewart and Kalah A. Paisley, Assistant United States Attorneys; Jesse A. Laslovich, United States Attorney; Office of the United States Attorney, United States Department of Justice, Helena, Montana; for Plaintiff-Appellee.

Samir F. Aarab (argued), Boland Aarab PLLP, Great Falls, Montana, for Defendant-Appellant.

## OPINION

HAMILTON, Circuit Judge:

In May 2021, defendant-appellant Brandon Wade Kurns visited a pawn shop in Helena, Montana, to sell ammunition for cash. He soon went to work for the pawn shop, Modern Pawn & Consignment ("Modern Pawn"), where he sold firearms and ammunition. The problem was that Kurns had a recent felony conviction, so his possession of firearms and ammunition was a federal crime under 18 U.S.C. § 922(g)(1).

In July 2021, after an investigation traced stolen gunpowder to Modern Pawn, agents of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") obtained a warrant to search the shop. Agents seized evidence indicating that Kurns had possessed several firearms. A federal grand jury indicted Kurns, and he

pleaded guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Kurns was sentenced to 36 months in prison, well below the advisory range under the Sentencing Guidelines.

Kurns appeals his sentence, arguing that the district court improperly applied two guideline enhancements: U.S.S.G. § 2K2.1(a)(4)(B)(i)(I) for possession of a semiautomatic firearm with an extended magazine and § 2K2.1(b)(1)(B) for possessing eight or more firearms. Next, he claims that the district court violated the Fifth Amendment by drawing an adverse inference from his silence during sentencing. Finally, Kurns argues for the first time that we should reconsider his sentence in light of the Supreme Court's decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). We affirm the district court's sentence. A preponderance of the evidence proved the underlying facts required for each guideline enhancement, no Fifth Amendment violation occurred, and Kurns' argument under *Bruen* is untimely at this late stage.

I.  *Factual and Procedural History*

In April 2020, Kurns was convicted in a Montana state court of felony criminal endangerment. That meant that any future possession of firearms and ammunition would violate 18 U.S.C. § 922(g)(1). In May 2021, Kurns entered Modern Pawn in Helena, Montana, and sold a box of ammunition. In June 2021, while still on state-court probation, Kurns began working at Modern Pawn. He inventoried and sold firearms and ammunition to Modern Pawn customers. He also performed background checks for firearm sales.

ATF began investigating Modern Pawn in the summer of 2021 after tracking stolen gunpowder to the shop. In July 2021, ATF agents obtained and executed a search warrant

for Modern Pawn, seizing firearms and ammunition, as well as video surveillance footage and firearm transfer documents.

The evidence indicated that Kurns sold several firearms during the summer of 2021. Video footage confirmed that Kurns physically handled five firearms, including an AR-style pistol. For four other transactions listed in the presentence report ("PSR"), Kurns completed transfer documents, but those transactions were not captured by the video surveillance. In two other transactions, Kurns handled pawn-shop customers' sales of firearms to Modern Pawn.

Kurns pleaded guilty to one count of violating 18 U.S.C. § 922(g)(1) as a felon in possession of a firearm. The PSR recommended a base offense level of 20 under U.S.S.G. § 2K2.1(a)(4)(B)(i)(I) because Kurns' relevant conduct included possessing a semiautomatic firearm capable of accepting a large-capacity magazine. The PSR also recommended a four-level enhancement under § 2K2.1(b)(1)(B) because Kurns possessed at least eight firearms. Because some firearms were stolen, the PSR recommended a two-level increase under § 2K2.1(b)(4)(A). The PSR also recommended a three-level reduction from the adjusted offense level of 26 for acceptance of responsibility, resulting in a total offense level of 23. With a total offense level of 23 and a criminal history category of V, the Guidelines recommend a range of 84 to 105 months in prison. Kurns objected to the enhancements for the number of firearms and possessing a semiautomatic firearm capable

of accepting a high-capacity magazine. He argued for a guideline range of 37 to 46 months.[1]

At the sentencing hearing, the government called Agent Caleb Enk, the ATF case agent, to testify about surveillance photographs, transaction documents, and his observations in Modern Pawn. Agent Enk testified that the AR pistol depicted in the surveillance footage of Kurns "appears to have what looks like a general 30-round AR-style magazine." Agent Enk reached his conclusion based on the physical characteristics of the magazine protruding from the firearm and years of experience handling similar firearms. Agent Enk testified that Modern Pawn regularly had one employee completing firearms transactions. He also said that he never saw replica guns or fake guns when he was in Modern Pawn as a customer and that ATF did not seize any replica or fake guns during its search of Modern Pawn. Finally, Agent Enk testified that the pawn shop's primary source of income came from sales of functional firearms and live ammunition.

During cross-examination, defense counsel began to ask Agent Enk about Kurns' alleged possession of each firearm in the transactions not shown on surveillance footage. Counsel was trying to develop support for his argument that, without accompanying surveillance footage, Kurns' completion of ATF transfer forms was insufficient to prove his possession of the transferred firearms. Kurns' counsel

---

[1] Kurns sold a Glock Model 17 to a Modern Pawn customer on June 25, 2021. A United States Probation Officer contacted the customer about the Glock. The customer told the officer that the Glock was semiautomatic and had a 17-round magazine at the time of purchase. Kurns objected to the Glock Model 17 triggering § 2K2.1(a)(4)(B)(i)(I). The district court did not consider the Glock Model 17 in applying that enhancement, so we do not discuss it further.

asked Agent Enk if "the fact that [Kurns] signed that piece of paper" necessarily meant "that he also touched the firearm?" Agent Enk responded that "it is a very realistic possibility, yes," but that he did not "know for a fact that [Kurns] … handled that gun."

Judge Morris and defense counsel then engaged in the following exchange:

> The Court: Mr. Aarab, I'm assuming we're going to get the same answer for all of these weapons.
>
> Mr. Aarab: Well, Your Honor, I need to develop a record, and I don't mean to –
>
> The Court: I guess, if you want to add to your evidence, you can put Mr. Kurns on the stand under oath and have him deny that he handled those weapons if that's the evidence.
>
> Mr. Aarab: It is the government's burden of proof.
>
> The Court: I know. I'm just saying if the government – their burden is the testimony of Agent Enk here.
>
> Mr. Aarab: Yes.
>
> The Court: You can finish your cross-examination. But my point is if you are going to try to – it's a preponderance of the evidence standard here in the sentencing hearing. If you want to meet the preponderance, you can put Mr. Kurns on the stand and have him deny that he touched those weapons under oath.

Mr. Aarab: Well, Judge, I don't think –

The Court: I will leave that up to you to decide what route you want to go. Go ahead, please.

Kurns then called his investigator, who testified that "anywhere from five to six" employees worked at Modern Pawn. Kurns' counsel argued that even though Kurns was listed as the transferor of the firearms on the ATF paperwork, other employees may have been the only ones physically handling the firearms during those transactions.

Based on the testimony of Agent Enk, his experience about how Modern Pawn operated, video surveillance of the store, and the ATF transfer forms, the district court found by clear and convincing evidence that Kurns had possessed at least eight firearms, including a semiautomatic AR pistol with a high-capacity magazine. As a result, the district court started from a base offense level of 20 under § 2K2.1(a)(4)(B)(i)(I) and added four levels for possession of at least eight firearms under § 2K2.1(b)(1)(B). The district court also added two levels under § 2K2.1(b)(4)(A) because at least two of the firearms were stolen. The court then reduced Kurns' offense level by three points to reflect his acceptance of responsibility and timely notification of plea. Ultimately, the district court calculated the advisory guideline range of 84 to 105 months in prison using a total offense level of 23 and criminal history category V. The court sentenced Kurns to 36 months in prison, varying downward from the guideline range "to avoid disparate sentences with the codefendants, who have been sentenced so far, [and] to more accurately reflect the role that Kurns played relative to the role of those codefendants."

## II. *Standard of Review and Analysis*

In reviewing the district court's application of the Sentencing Guidelines, we review the district court's identification of the applicable provisions de novo, factual findings for clear error, and application of those Guidelines to the facts in the case for abuse of discretion. *United States v. Gasca-Ruiz*, 852 F.3d 1167, 1170 (9th Cir. 2017) (en banc). Factual findings at sentencing must be made by a preponderance of the evidence. *United States v. Lucas*, 101 F.4th 1158, 1159 (9th Cir. 2024) (en banc) ("*Lucas II*").

### A. *Semiautomatic Firearm Capable of Accepting a Large Capacity Magazine*

The district court did not err by starting with a base offense level of 20. Video, documentary, and testimonial evidence proved Kurns' possession of a semiautomatic firearm with a 30-round magazine by a preponderance of the evidence sufficient to satisfy *Lucas II*. As a result, "the district court's findings of fact, and its application of those findings of fact to the correct legal standard" were not "illogical, implausible, or without support in inferences that may be drawn from facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1251 (9th Cir. 2009).

The Guidelines provide for a base offense level of 20 when the offense involved a "semiautomatic firearm that is capable of accepting a large capacity magazine." U.S.S.G. § 2K2.1(a)(4)(B)(i)(I). The definition of a "semiautomatic firearm that is capable of accepting a large capacity magazine" requires that, at the time of the offense, the firearm "has the ability to fire many rounds without reloading" because a magazine capable of accepting more than 15 rounds of ammunition is attached or in close proximity to the firearm, with only a small carveout for

semiautomatic firearms "with an attached tubular device capable of operating only with .22 caliber rim fire ammunition." § 2K2.1 app. n.2.

Citing *United States v. Lucas*, 70 F.4th 1218 (9th Cir. 2023) ("*Lucas I*"), Kurns argues that the district court erred by applying § 2K2.1(a)(4)(B)(i)(I) because testimony about a magazine's capacity based exclusively on an expert's evaluation of a magazine's appearance in a photograph did not provide sufficiently clear and convincing proof. *Lucas I* had followed circuit precedent requiring proof of guideline enhancements by clear and convincing evidence, but on rehearing en banc, *Lucas I* was vacated and overruled on this point in *Lucas II*. 101 F.4th at 1159. *Lucas II* brought this circuit's doctrine in line with that of other circuits, requiring proof of guideline enhancements by a preponderance of the evidence.

In *Lucas I*, the panel held that the government failed to prove possession of a semiautomatic firearm by clear and convincing evidence because "the government did not physically produce or inspect the firearm or the magazine." 70 F.4th at 1222. The *Lucas I* panel continued: "Without physical evidence, the government largely relied on its expert agent, who was, at most, equivocal. The agent acknowledged that without physical inspection, he could not conclusively state whether the magazine could in fact accept more than 15 rounds or whether it was instead modified to accept fewer. Nor did the agent explain the prevalence of any type of magazine in the community; he only relayed his personal experience with modified magazines." *Id.*

*Lucas II* held that preponderance of the evidence is the proper standard of proof for factual findings underlying guideline enhancements. 101 F.4th at 1159. Contrary to

Kurns' argument and given the clarified standard of proof, Agent Enk's inability to identify the precise make and model of the weapon pictured in the surveillance photograph or to rule out entirely the possibility that the pictured weapon was a non-lethal replica or a .22 caliber is not dispositive of whether the government sufficiently proved possession.

The government's expert, Agent Enk, testified that the firearm Kurns possessed in the photo evidence "appears to have what looks like a general 30-round AR-style magazine." He reached this opinion based on 18 years of experience as an ATF agent and "on the physical characteristics of the magazine protruding from the firearm and its relative size to the grip." Agent Enk also testified that he did not come across any replica firearms at Modern Pawn while undercover. Additionally, no replicas or .22 caliber AR pistols were found during the ATF search of Modern Pawn. The AR pistol was purchased in Montana, where the standard 30-round magazines for that type of weapon are not illegal.

The district court "determined by clear and convincing evidence" that the government met its burden to demonstrate that the AR pistol qualified for the sentencing enhancement under § 2K2.1(a)(4)(B)(i)(I). This evidence was sufficient to support the finding by a preponderance of the evidence. *See, e.g.*, *United States v. Baldon*, 956 F.3d 1115, 1127–28 (9th Cir. 2020) (preponderance of the evidence standard was met for enhancement under § 2D1.1(b)(1) for possession of a firearm in connection with a drug offense based on evidence that the defendant leased a storage unit where the firearm was discovered and had accompanying ammunition at his residence); *see also United States v. Pena*, 91 F.4th 813, 818–19 (5th Cir. 2024) (upholding application of § 2K2.1(a)(4)(B) where video evidence of a firearm

accepting a 16-round magazine met preponderance of the evidence standard); *United States v. Matthews*, 3 F.4th 1286, 1288–91 (11th Cir. 2021) (upholding application of § 2K2.1(a)(4)(B) based on ATF agent's testimony that the standard magazine for the rifle in question was a 30-round magazine despite no direct evidence that magazine was inserted in firearm at time of possession).

B. *Possession of at Least Eight Firearms.*

The district court also found that Kurns possessed at least eight firearms and added four levels to the base offense level. Kurns objects that, without corroborating video evidence, the ATF forms he signed authorizing the sales are insufficient to prove he possessed the firearms in question. This argument is not persuasive.

Kurns' signatures on the ATF transfer forms, at least as supplemented by Agent Enk's testimony about his experience as a customer at Modern Pawn, satisfy the preponderance of the evidence standard under *Lucas II*. Agent Enk testified that his "experience as an ATF agent, knowing how the field works, and also [his] own purchase of several firearms and watching the working of that occur" supported an inference that Kurns handled the guns for which he completed the ATF forms. Agent Enk also testified that it was the regular practice at Modern Pawn that each firearm transaction would be handled by one employee. That testimony undercuts defense counsel's suggestion that perhaps Kurns completed the paperwork for some sales without physically handling those firearms.

To counter Agent Enk's testimony, Kurns called David Jeseritz, a private investigator with law enforcement experience. Jeseritz testified that, after reviewing 800 hours of Modern Pawn's surveillance footage, "on a couple

occasions" more than one employee served a single customer. Jeseritz testified that he could not "attest to knowing if [Kurns] touched the firearm or not" based on Kurns having completed the applicable transfer form.

While it is possible that a transfer form could have been completed by an employee who did not also handle the transferred weapon, absolute certainty is not required under the preponderance of the evidence standard. *Lucas II*, 101 F.4th at 1164 (explaining that preponderance of the evidence means "more likely than not") (citing *United States v. Kilby*, 443 F.3d 1135, 1141 (9th Cir. 2006)). Given Kurns' signatures on the transfer forms and Agent Enk's testimony about Modern Pawn's standard business practices, the district court did not clearly err by finding that Kurns more likely than not possessed the firearms he transferred.

Further, even if we accepted Kurns' speculation that more than one employee might have been involved in the firearm sales not covered on video, so that Kurns might have completed the transfer paperwork without physically possessing those firearms himself, he still would have constructively possessed them. The felon in possession of a firearm statute "prevents a felon not only from holding his firearms himself but also from maintaining control over those guns in the hands of others." *Henderson v. United States*, 575 U.S. 622, 626 (2015) (explaining principle of constructive possession). The district court recognized during the sentencing hearing that "possession is broadly defined" and that it is "not simply that something is in your hand, but you also have the ability to control it."

Our analysis on constructive possession is guided by *United States v. Terry*, 911 F.2d 272 (9th Cir. 1990). In *Terry*, police officers found a shotgun in a bedroom closet the

defendant shared with his wife. *Id.* at 274. The defendant was charged with and convicted of being a felon in possession of a firearm. His wife testified that the shotgun belonged to her, and there was "no evidence that [the defendant] had ever touched the gun." *Id.* at 278. Although we ordered a new trial for other reasons, the evidence in *Terry* was sufficient for conviction. We concluded there that the defendant's "knowledge of the gun's location and his unhindered access to it" sufficed to establish constructive possession, and we explained that, to "prove constructive possession, the government must prove 'a sufficient connection between the defendant and the contraband to support the inference that the defendant exercised dominion and control over the substance.'" *Id.* (quoting *United States v. Disla*, 805 F.2d 1340, 1350 (9th Cir. 1986)). "[M]erely knowing the weapon is nearby" is not enough. *Id.* Instead, "[t]he circumstances of each case must be examined to determine if there is 'such a nexus or relationship between the defendant and the goods that it is reasonable to treat the extent of the defendant's dominion and control as if it were actual possession.'" *Id.* (quoting *United States v. Cousins*, 427 F.2d 382, 384 (9th Cir. 1970)). The essential question is whether "a party has knowledge of the weapon and both the power and the intention to exercise dominion and control over it." *Id.*

Kurns' execution of the transfer documents supports an inference of constructive possession. Federal law requires licensed gun dealers like Modern Pawn to complete ATF transfer forms to sell firearms. 27 C.F.R. § 478.124(a). Kurns' completion of the transfer form was needed for each sale. Without his signature, none of the firearms in question could leave Modern Pawn legally. The form requires the person carrying out the transfer to certify that "it is not

unlawful for me to sell, deliver, transport, or otherwise dispose of the firearm(s) listed on this form." **2**  Kurns controlled the firearms because he was required to refuse the sales if the sales were prohibited.  The district court did not clearly err in its determination that a preponderance of the evidence supported the finding that Kurns exercised the requisite control over the firearms to establish, at a minimum, constructive possession.  *See Henderson*, 575 U.S. at 626.

C. *No Fifth Amendment Violation*

Kurns' second objection to the guideline enhancement for possessing eight or more firearms was that the district court violated his Fifth Amendment rights by drawing an adverse inference from his silence at sentencing.

Potential violations of a defendant's Fifth Amendment privilege against self-incrimination are reviewed de novo. *United States v. Oriho*, 969 F.3d 917, 923 (9th Cir. 2020). "The Fifth Amendment right to remain silent contains an implicit assurance 'that silence will carry no penalty.'" *United States v. Lopez*, 500 F.3d 840, 844 (9th Cir. 2007) (quoting *Doyle v. Ohio*, 426 U.S. 610, 618 (1976)).  A defendant retains the privilege against self-incrimination at a sentencing hearing, and a sentencing court may not draw an adverse inference from a defendant's silence. *Mitchell v. United States*, 526 U.S. 314, 325–29 (1999).

Kurns argues that the district court violated his Fifth Amendment privilege against self-incrimination and impermissibly relieved the government of its burden of proof by suggesting that Kurns could testify that he did not

---

[2] U.S. Department of Justice Bureau of Alcohol, Tobacco, Firearms, and Explosives Firearms Transaction Record Form 4473 at 3.

physically possess the firearms covered by the transfer forms for sales without accompanying video evidence. Kurns argues that the district court drew an impermissible, adverse inference comparable to that drawn in *United States v. Mezas de Jesus*, 217 F.3d 638 (9th Cir. 2000). But there are important differences between that case and this one.

In *Mezas de Jesus*, the defendant was convicted of unlawful possession of a firearm in violation of 18 U.S.C. § 922(g)(5). At sentencing, the government argued that Mezas de Jesus committed the offense during an uncharged kidnaping. 217 F.3d at 639. The district court applied the preponderance of the evidence standard and found that Mezas de Jesus had indeed possessed a firearm in connection with a kidnaping. The court sentenced him more harshly under the kidnaping guideline instead of the guideline for possession of a firearm. *Id.* at 639–40. Mezas de Jesus objected to the application of the kidnaping guideline because "(1) the kidnaping was not supported by a preponderance of the evidence, and (2) he had not had an opportunity to cross-examine the witnesses to the alleged kidnaping." *Id.* at 641. Mezas de Jesus demanded an evidentiary hearing. *Id.*

We found that "the district court implicitly drew an adverse inference from Mezas de Jesus's silence at sentencing." *Id.* at 644. We focused on the district court's statement: "So if the court is presented with a prima facie case by the government that a kidnaping occurred, wouldn't I *have to* see something from you like, for instance, a statement under oath from your client that it didn't happen, in order to require an evidentiary hearing?" *Id.* at 644 (emphasis added). We concluded that "the district court did draw an adverse inference from Mezas de Jesus's silence and that this error was a factor in its misapplication of the

preponderance standard." *Id.* at 645. "By focusing on the defendant's silence at sentencing and quantitatively weighing it against the government's 'untested' evidence, the district court effectively shifted the burden of proof at sentencing to the defendant. In so doing, the district court erred." *Id.* We remanded for resentencing.

The error in *Mezas de Jesus* did not occur here. Unlike in *Mezas de Jesus*, the district court never implied that Kurns' testimony was necessary to rebut arguments advanced by the government. Here the district court suggested that Kurns could "add to [his] evidence" by "deny[ing] that he touched those weapons under oath." But contrary to Kurns' argument that the district court viewed Kurns' decision not to testify as an "absence of evidence," this exchange showed only that Kurns could add to his already existing evidence if he elected to testify. Thus the district court was not viewing this exchange as a situation where the government had made a prima facie case and would require Kurns to take the stand to prevent the government from meeting the preponderance standard.

In support of his claim that the district court drew an adverse inference from his silence, Kurns points to only one statement by the district judge: "So we don't have statements from any witnesses who did not testify." This statement does not show that the court drew a negative inference from silence. *See United States v. Robinson*, 485 U.S. 25, 32 (1988) (finding no Fifth Amendment violation where "prosecutorial comment did not treat the defendant's silence as substantive evidence of guilt, but instead referred to the possibility of testifying as one of several opportunities which the defendant was afforded").

The district judge here grappled explicitly with Kurns' arguments and evidence. The court found that the business records, the screenshots from the video of Modern Pawn, and Agent Enk's testimony about his experience about how Modern Pawn operated demonstrated "that the government has met its burden of showing that Mr. Kurns is responsible [for the firearms]." The judge "read and considered all of the information provided to [the court], including the presentence report, the statements of the hearing by the witnesses who testified under oath."

We recognize, though, that even in a criminal sentencing there is good reason to be cautious about judicial comments on a refusal to testify. The Supreme Court has noted that "comment on the refusal to testify is a remnant of the 'inquisitorial system of criminal justice,' … which the Fifth Amendment outlaws." *Griffin v. California*, 380 U.S. 609, 614 (1965) (quoting *Murphy v. Waterfront Comm'n of New York Harbor*, 378 U.S. 52, 55 (1964)). Yet, there is no evidence that the district court weighed Kurns' silence in determining his sentence. Accordingly, no Fifth Amendment violation occurred. *See United States v. Johnston*, 789 F.3d 934, 943 (9th Cir. 2015) (finding no violation in the "context of the district court's careful review of the record and extensive explanation of the sentence").

D. *No Reconsideration Under Bruen*

On May 10, 2024, Kurns submitted a letter of supplemental authority under Federal Rule of Appellate Procedure 28(j). In this letter, Kurns asserted that two intervening authorities, *New York State & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), and *United States v. Duarte*, 101 F.4th 657 (9th Cir. 2024), *reh'g en banc granted, opinion*

*vacated*, 108 F.4th 786 (9th Cir. 2024), warrant reconsideration of his conviction. We disagree.

The arguments Kurns has raised after completion of appellate briefing were available to him at every previous stage of this case. "Arguments raised for the first time in 28(j) letters are ordinarily considered waived," especially arguments pertaining to "complex issue[s]." *Pakootas v. Teck Cominco Metals, LTD.*, 830 F.3d 975, 986 n.12 (9th Cir. 2016). A defense under *Bruen* was available to Kurns even before he entered his plea, let alone during sentencing and before submitting his briefs to this court. We decline to consider this new challenge.

## CONCLUSION

The judgment of the district court is AFFIRMED.